IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO.: SAG 23-186 |
| MATTHEW HIGHTOWER, | * | |
| Defendant. | | |

\*   \*   \*

**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Matthew Hightower, by and through his attorneys, Teresa Whalen and Daniel H. Goldman, files this Motion to Dismiss Indictment. In support of this request, Mr. Hightower states the following:

**A. STATEMENT OF THE CASE**

Matthew Hightower is charged in a five count Indictment with Conspiracy to Murder a Witness (Retaliation) in violation of 18 U.S.C. §1513(f) and four related charges.

Mr. Hightower was originally indicted in 2015 in case number 15-0322 for Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 and Aggravated Identity Theft in violation of 18 U.S.C. §1028(A((a) (hereinafter health care fraud charges) in case number MJG 15-322. On April 19, 2016 a Second Superseding Indictment was filed alleging Collection of Extension of Credit by Extortion in violation of 18 U.S.C. § 894 (a) and Use of Interstate Facilities for Extortion Resulting in Death in violation of 18 U.S.C. § 1952(a)(2)(B) (hereinafter extortion charges). Initially, Mr. Hightower was represented by Richard B. Bardos on all charges. On June 15, 2016, the court severed the health care fraud and related charges from the extortion charges. Gary E. Proctor was appointed to represent Mr. Hightower on the health care

1

fraud charges but was apparently advised—without any evidence provided to Mr. Hightower—that he had been selected for the appointment because of his capital qualifications, in anticipation of potential capital charges being brought relating to the current charges of conspiracy. Mr. Bardos remained Mr. Hightower's attorney in the extortion case and defended him during a jury trial in September 2016. After a guilty finding, Mr. Hightower was sentenced to a total of 380 months on the extortion charges.

A former co-worker, L.E., from the company that employed Mr. Hightower at which the fraud allegedly occurred, testified at the extortion trial.[1] This witness was also a potential witness against Mr. Hightower in the health care fraud matter. On May 27, 2016, while the extortion case was awaiting trial, the victim in the instant case, L. A., was murdered. The federal government began an investigation into Mr. Hightower, believing the motive for the murder of L.A. was that she was misidentified as her neighbor L.E., the former co-worker. The government believed the witness L. E. was the intended target of the murder of L.A.

The murder investigation figured prominently in Proctor's representation of Mr. Hightower, although he was only appointed on the health care fraud case. Mr. Proctor emphasized throughout that the healthcare fraud representation that he was focusing his efforts on a potential capital case, which led to the breakdown in communication between Mr. Hightower and Mr. Proctor. Mr. Proctor was pressuring Mr. Hightower to discuss an unindicted possible capital charge throughout the health care fraud representation. Mr. Proctor's file reflects work related to the potential redirection of his defense from health care fraud to a charge alleging the murder of L.A. A trial was held in the health care fraud matters in Case Number 15-0322,

---

[1] Initials of victims and intended victims are used to protect the victim's identity.

after which Harry Crawford and Elma Myles were convicted. The health care fraud counts were dismissed against Mr. Hightower on August 20, 2018.

On December 19, 2017, months before the dismissal of the health care fraud counts, the government obtained an Indictment in the murder of L.A. against two co-conspirators, Devon Carter and Clifton Mosely. Both were convicted after a jury trial in 2020 in the matter of United States v. Carter, 17-0667. Notably, Mr. Hightower was not charged in that Indictment. Now, six years after the prosecution of the murder and over seven years after the murder, Mr. Hightower is the single defendant in the current Indictment alleging the same conduct as that used to prosecute his alleged co-conspirators. The government has filed Government's Notice and Motion to Admit Evidence Pursuant to Rule 404(b) at ECF 51. In the motion, the government gave notice it intends to admit evidence of the health care fraud, the extortion murder, and several other alleged bad acts. The motion is pending a response and resolution on the merits.

Mr. Hightower noted an appeal in the extortion case. On December 29, 2016, a member of the Criminal Justice Act Panel, Erek L. Barron, was appointed to represent Mr. Hightower on the appeal. He continuously represented Mr. Hightower and filed necessary briefing until he withdrew from the case. The judgment was affirmed on March 12, 2018. In the unpublished opinion, the appellate court denied Mr. Hightower's *pro se* motion to terminate Mr. Barron as his counsel and substitute with new counsel. In Mr. Hightower's motion, he alleged Mr. Barron refused to file issues with the court that Mr. Hightower requested he include in his brief. *Exhibit 1.* Mr. Barron also refused to obtain and provide to Mr. Hightower cell phone records Mr. Hightower believed critical to his appeal. Upon denial of the appeal, Mr. Baron filed the necessary post appellate pleadings. His motion to withdraw was granted on June 4, 2018. Thereafter, Mr. Hightower filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 18 U.S.C. § 2255(b).  *15-0322, ECF 547* and *547-1*.  The motion contained similar allegations that Mr. Barron failed to raise arguments on appeal.  This too was denied.  *ECF 15-1917, ECF 2*.

On October 7, 2021, Mr. Barron was sworn in as United States Attorney for the District of Maryland.  As noted in paragraph 3, the investigation into Mr. Hightower's alleged involvement in the murder of L.A. commenced immediately after the murder on May 27, 2016 and continues to the present time.  Mr. Barron has been the United States Attorney and thus at least a principal supervisory prosecutor in this case, since October 2021.  Mr. Baron's signature is on the Indictment that was issued on May 18, 2023, but first served on Mr. Hightower on July 10, 2023.  The signature may have been affixed by a proxy labeled "AZ," believed to be Assistant United States Attorney Aaron Zelinsky.  *ECF 1*.  Mr. Barron's name appears as the lead prosecutor in discovery letters and all correspondence from the government, including a letter filed at ECF 14 indicating the United States will not seek the death penalty.  Mr. Hightower is charged in each of the five counts alleged in the Indictment.  Upon information and belief, Mr. Barron would have been intricately involved in the decision to indict Mr. Hightower and the decision not to seek the death penalty.

While the procedure for seeking or failing to seek the death penalty in the Office of the United States Attorney is not publicly accessible, undersigned counsel Teresa Whalen has handled numerous death eligible cases since 1999 to the present.[2]  The procedure with each of Mr. Barron's predecessors has been the following:

---

[2] Counsel acknowledge that procedures in the United States Attorney's Office may have changed given there have been recent changes to the DOJ procedures to allow for a "fast track" process of review once the case is presented to the DOJ for review from the U.S. Attorney.

- Once a death eligible count is indicted, the Assistant United States Attorney usually prepares a memorandum outlining the facts of the case; the aggravating factors in the case; and the mitigation that the attorney has learned.
- The defense attorney may or may not be invited to present reasons against seeking the death penalty to the United States Attorney.
- If requested to present reasons against the death penalty, the attorney usually provides argument in writing and may attach evidence for review.
- Whether the defense presents evidence and argument or not, the United States Attorney decides what sentence he or she would recommend to the Department of Justice and forwards that recommendation to the Department of Justice.

The Department of Justice ("DOJ") protocol for death penalty review can be found at www.justice.gov, Justice Manual, Title 9. Section 9-10.040 requires the United States Attorney to consult with the Capital Case Section of DOJ prior to indicting a death eligible crime. Section 9-10.060 notes a mandatory pre-indictment review of the case by the Capital Case Section. That review can either be an expedited review pursuant to §9-10-070 or a non-expedited review pursuant to §9-10-080. When the United States Attorney is contemplating requesting authorization to seek the death penalty, he or she must comply with the non-expedited review process. This requires submission of memoranda and the recommendation of the United States Attorney as to whether he or she believes the death penalty is appropriate to seek.

There is no reason to believe these procedures were not followed by Mr. Barron.[3] The method of review is confidential. Undersigned counsel believe it was likely handled in an expedited manner because the notice that the government would not seek the death penalty was filed on August 8, 2023, just 5 months after the indictment was issued. *ECF 14.*

---

[3] In addition to filing this motion, the Defendant has filed a letter to the Assistant United States Attorneys requesting discovery relating to the allegations in this motion.

**B. ARGUMENT**

### 1. There is a conflict of interest in the same attorney defending Mr. Hightower only to later prosecute him as the United States Attorney.

Given the United States Attorney's Office usual procedure in handling a death eligible case and the protocol of DOJ, upon information and belief, Mr. Barron had to be intricately involved in the decision as to what charges to file and what penalty to seek for his former client, Matthew Hightower. Undersigned counsel were not invited to present argument against seeking the death penalty either to the United States Attorney or to DOJ Capital Case Section. This lends support to the belief that the matter was handled as an expedited matter pursuant to the DOJ manual.

As is often the case in providing effective assistance of counsel, all of Mr. Hightower's attorneys were communicating with each other and sharing information. Thus, Mr. Bardos who handled the extortion trial and initially represented Mr. Hightower in the health care fraud, shared his files with Mr. Proctor. Mr. Proctor, while handling the health care fraud matter and investigating the potential future death eligible murder case, shared his files with Mr. Barron while Mr. Baron handled the appeal of the extortion trial. Mr. Barron was given access to Mr. Proctor's confidential Dropbox account that stored the contents of his file electronically. Upon information and belief, the two attorneys and/or associates discussed the potential jeopardy Mr. Hightower was exposed to should the new death eligible murder case be indicted. As recently as July 19, 2023, undersigned counsel contacted Mr. Proctor's office and learned Mr. Barron was still an authorized user of the confidential Dropbox account. *Exhibit 2.* He was removed from the account. Upon information and belief, the account records indicate Mr. Barron last accessed the account on December, 29, 2022. As noted above, the government contends other crimes evidence is either intrinsic to the murder of L.A. or should otherwise be admissible at trial. At

this stage, ALL the evidence relating to both events (health care fraud and extortion murder) are at play in the current charges against Mr. Hightower. Thus, the conflict by Mr. Barron is especially concerning given his interaction with the attorneys on these other criminal acts.

Both the American Bar Association and the state of Maryland have adopted similar rules of professional conduct. Marland Rule 19-301.9 is essentially the same as Rule 1.9 of the American Bar Association Model Rules of Professional Conduct.[4]  Rule 1.9 sets out an attorney's duty to a former client as follows:

> a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

*http:www.Americanbar.org/groups/professional_responsibility/pubications/model_rules_of_professional_conduct.*

---

[4] Maryland Attorney's Rules of Professional Conduct can be found at Maryland Rules, Title 19, Chapter 300 set out on the Supreme Court's website at courts.state.md.us/attygrievance/rules.com.

Mr. Barron owed a duty to Mr. Hightower to recuse himself and his office- the United States Attorney's Office for the District of Maryland- from making any decisions about Mr. Hightower's case, especially the life altering decisions about his former client's future. Mr. Barron's current representation of a party that is materially adverse to Mr. Hightower is an actual conflict of interest. Mr. Hightower was not informed of the status of the investigation by the United States Attorney's Office. There is also no way in which Mr. Hightower could have learned prior to his nomination, that Mr. Barron would be sworn in as the United States Attorney – a position in which he had direct knowledge and control over charging, supervising, and possible sentencing decisions in the pending investigation. Mr. Hightower would only have learned of the conflict of interest when he was served with an indictment in this case. There is no evidence that he was provided the opportunity to waive a conflict, much less that he had given informed consent to waive such conflict. Instead, notifying Mr. Hightower of a Grand Jury investigation and sealed indictment for any purpose would have violated Mr. Barron's obligations (and perhaps criminal statutes) as the United States Attorney. Upon learning the investigation of Mr. Hightower for the murder of L.A. was ongoing when he took office, he should have immediately recused himself from continuing as the adverse party.

Rule 1.10 of the American Bar Association Model Rules of Professional Conduct sets out the imputation of conflict of interest in relevant part as follows:

> a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless…

*Id.* There are exceptions to this rule that are inapplicable in this situation. Rule 1.10 states that if Mr. Barron has a conflict of interest, so too do the others within this United States Attorney's

8

Office. This conflict arose on the day Mr. Barron was sworn in as the United States Attorney. His office should have recused itself from further representation of the United States in this case.

Finally, as to the AMA model rules, special conflicts of government employees are set forth in Rule 1.11 in relevant part as follows:

> d) Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee:
>
> (1) is subject to Rules 1.7 and 1.9; and …
>
> *Id.* The term "matter" in this rule includes investigation, charge, accusation, and arrest.

Thus, an attorney, even the United States Attorney, laboring under a conflict of interest, has a duty to withdraw from a case. That duty extends to members of his office. The DOJ Justice Manual requires attorneys to comply with applicable rules of professional conduct. *Justice.gov/justice manual 1-4.020.* The ABA rules along with corresponding Maryland rules are the applicable rules of professional conduct.

An attorney has an actual conflict of interest when he actively represents conflicting interests. *Cuyler v. Sullivan*, 445 U.S. 335, 350. (1980). In determining a Sixth Amendment claim of ineffective assistance of counsel when there is an actual conflict of interest in the attorney's continued representation of the petitioner, the Fourth Circuit noted, "[t]he right to have assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *United States v. Tatum*, 943 F. 2d 370, 375 (4th Cir. 1991), citing *United States v. Glasser*, 315 U.S. 60, 76 (1942). In *Tatum,* the conflict complained of that violated the Sixth Amendment was a member of the defendant's trial team that also represented witnesses; had associations with co-defendants; and a defense witness was his partner. While the facts do not relate to the same

9

type of conflict as here -defense attorney to prosecutor – the principles of actual conflict and the Sixth Amendment violations are the same.  See also, *Ganger v. Peyton,* 379 F.2d 709 (4th Cir. 1967) (error for prosecutor of defendant in assault matter who also represented the assault victim in the parties' divorce case); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (where judge had financial interest, even if the probability of actual conflict is low, Due Process requires recusal).

The Fifth Circuit found a recusal was necessary in a somewhat reverse set of facts. The defendant in a criminal matter was represented by an attorney who employed an associate to work on the case.  The associate had previously been a prosecutor in the early stages of the case.  See, *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979).  The Fifth Circuit found in *Kitchin* that the associate attorney labored under a conflict of interest by representing an adverse party; the conflict extended to his whole firm; and the aggrieved party need not prove that the attorney obtained confidential information nor that he had or would disclose it to his present employer.

Mr. Barron's had an actual conflict of interest that dictated his recusal.

> **2. Even if Mr. Barron does not have an actual conflict of interest, his representation of Mr. Hightower as his defense attorney and the later prosecution of him for an associated matter gives the appearance of a conflict of interest that required recusal.**

Criminal investigations and cases against one person that are conducted by overlapping law enforcement agencies; that arise out of the same prosecuting body; that have overlapping prosecutors; and are conducted generally at the same time necessarily requires coordination amongst prosecutors.

The appointment of an interested prosecutor "creates an appearance of impropriety that

diminishes faith in the criminal justice system in general." *Young v. Unites States ex rel. Vuitton et Fils SA,* 481 U.S. 787, 811 (1987). In *Young*, the Supreme Court found that the appointment of a "interested" private attorney as the prosecutor in a contempt matter was at least the appearance of a conflict of interest. Moreover, the court found such facts did not warrant a harmless error analysis.

> Appointment of an interested prosecutor is also an error whose effects are pervasive. Such an appointment calls into question, and therefore requires scrutiny of, the conduct of an entire prosecution, rather than simply a discrete prosecutorial decision. Determining the effect of this appointment thus would be extremely difficult.

*Id.*, at 812-813. The Supreme Court established a "categorical rule against the appointment of an interested prosecutor, adherence to which requires no subtle calculations of judgment." *Young,* at 814. "Fairness of course requires an absence of actual bias in the trial of cases." *In re Murchison*, 349 U.S. 133, 136 (1955). As a result, "our system of law has always endeavored to prevent even the probability of unfairness." *Id*.

While prejudice is not required to be shown, Mr. Hightower may well have been prejudiced had he needed to present mitigation when the death penalty was a possible sentence. That same prejudice follows him to the negotiation stage with any prosecutor from the current United States Attorney's Office. See, Bruce A. Green & Rebecca Roiphe, Rethinking Prosecutors' Conflicts of Interest, 58 B.C. L. Rev. 463, 491 (2017) (noting that "actual prejudice" in the case of a conflicted prosecutor is "nearly impossible to show, given that there is no discovery of prosecutors' internal decision-making and, in any event, prosecutors themselves may be unaware of the cognitive impact of a conflict"). As a categorical rule, Mr. Hightower is entitled to a disinterested prosecutor.

### 3. The Due Process Clause Affords a Criminal Defendant the Right to A Disinterested Prosecutor

Mr. Hightower has the right to a trial by an impartial prosecution. Justice Blackmun declared decades ago in his concurring opinion in *Young* that "[t]he practice—federal or state—of appointing an interested party's counsel to prosecute for criminal contempt is a violation of due process." *Young,*

11

at 814-15.  In line with Justice Blackmun's concurring opinion, lower courts, including the Fourth Circuit, have acknowledged that the right to an impartial prosecutor does, in fact, have a constitutional component. Prosecution by a prosecutor with improperly conflicting interests "violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment." *Ganger v. Peyton*, 379 F.2d 709, 714 (4th Cir. 1967).

Diverse levels of due process protection against a prosecutor with a conflict of interest have been recognized by other courts.  See, e.g., *United States ex rel. SEC v. Carter*, 907 F.2d 484, 486 n.1 (5th Cir. 1990); *United States v. LaVallee,* 439 F.3d 670, 681 (10th Cir. 2006); *United States v. Heldt*, 668 F.2d 1238, 1277 (D.C. Cir. 1981); Faulkner *v. State*, 260 P.3d 430, 431 (Okla. Crim. App. 2011); *In re Goodman*, 210 S.W.3d 805, 808 (Tex. App. 2006); *Lux v. Commonwealth*, 484 S.E.2d 145, 149 (Va. App. 1997); *State v. Eldridge*, 951 S.W.2d 775, 782 (Tenn. Crim. App. 1997); *State v. Hunter*, 313 S.C. 53, 54 (S.C. 1993); *Cantrell v. Commonwealth*, 329 S.E.2d 22, 26 (Va. 1985).

These lower court rulings accurately acknowledge that a criminal defendant's right to due process is affected when prosecuted by a lawyer with a conflict of interest. This Court should follow suit and dismiss the indictment filed upon the signature of an interested prosecutor.

WHEREFORE, for the foregoing reasons and those presented at a hearing on this motion, Mr. Hightower requests the dismissal of all counts pending against him.

Respectfully submitted,

_____s_____
Teresa Whalen
801 Wayne Avenue, Suite 205
Silver Spring, Maryland 20910
Bar No. 25245
(301) 728-2905 [cell]

        _____s_____
        Daniel H. Goldman
        421 King Street, Suite 505
        Alexandria, VA 22314
        (202) 677-5709 [cell]