**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **CRIMINAL NO.: SAG 23-186** |
| **MATTHEW HIGHTOWER,** | * | |
| Defendant. | | |

\*       \*       \*

**MOTION TO SUPPRESS EVIDENCE DERIVED
FROM SEARCH AND SEIZURE WARRANTS**

Comes now Matthew Hightower, by and through undersigned counsel, requests this Honorable Court suppress evidence derived from search and seizure warrants. In support of this motion Mr. Hightower states:

**A. BACKGROUND**

Mr. Hightower is charged with Conspiracy to Murder a Witness, in violation of 18 U.S.C. § 1513(f) and (a)(1)(B), and Witness Retaliation Murder, in violation of 18 U.S.C. § 1513 (a)(1)(B) and 18 U.S.C. § 2. Trial is scheduled for June 16, 2024.

**B. SEARCH AND SEIZURE WARRANT OF BMW ON JUNE 7**

On June 7, 2016, Special Agent Erin Fuchs obtained a search warrant to search Mr. Hightower's BMW for evidence relating to conspiracy to murder a federal witness. The Affidavit bases probably cause as follows:

- Details of the Extortion and Health Care Fraud indictments; and

- That the name of a source of interest was inadvertently given to the defense and was returned to the government on April 27, 2016; and

- The source of interest contacted the Agent to say her neighbor was murdered on 5/27/2016; and

- A Pontiac was seen near the crime scene where LA was murdered on 5/27/2016; and

- Davon Carter drove a Pontiac and exited the Pontiac to enter Mr. Hightower's black BMW on June 1, 2016; and

- A phone associated with Mr. Carter was in regular contact with Mr. Hightower while he was incarcerated; and

- Prior records of Davon Carter and Mr. Hightower.

The defendant moves to suppress evidence seized because the Affidavit fails to allege sufficient probable cause that evidence of the crimes alleged would be found contained within Mr. Hightower's car. The warrants were based upon affidavits that were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Illinois v. Gates,* 462 U.S. 213 (1983). At best, the Affidavit alleges the agent believed Mr. Carter was involved in the murder of the source's neighbor and that he was seen entering the BMW 5 days later. There is no indication that the agents believed evidence would be found on Mr. Carter or separately that evidence would be in the BMW. The affidavit is a general warrant and allows for a search of the BMW simply because Mr. Carter entered the car.

The Affidavit for the BMW search warrant fails to establish a sufficient nexus between alleged criminal conduct and the place to be searched. See, *United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988) (forbidding general warrants).

The last clause of the Fourth Amendment contains a "particularity requirement," which "is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion

of the officer executing the warrant." *United States v. Dargan,* 738 F.3d 643, 647 (4th Cir. 2013), quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010). "It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). The Framers' horror of "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (plurality op.), led them to include the Particularity Clause in the Fourth Amendment. This Clause requires that a warrant must "particularity describe the place to be searched and the persons or things to be seized." The warrant of Mr. Hightower's BMW relies solely upon boiler plate language that alleges in conclusory form that the Affiant knows people who commit crimes keep evidence in their cars. There is absolutely nothing specific that sets out probable cause that Mr. Hightower's car would likely contain evidence of a crime. The items taken from the BMW should be suppressed as evidence at trial.

### C. SEARCH AND SEIZURE WARRANT OF BMW ON JULY 8

After a thorough search of the BMW on June 7, 2016, just a month later, on July 8, 2016, Special Agent Clarence Holiday of the Department of Health and Human Services obtained a search warrant to search Mr. Hightower's BMW again. This time he alleged he was investigating violations of health care fraud and witness tampering. The Affidavit bases probable cause on the following:

- A search warrant at Aurielle Washington's residence uncovered two letters from Mr. Hightower; and

- Ms. Washington refused to speak with investigators; and

- After reviewing jail calls, the agent believed there were more letters; and

- Individuals often keep correspondence in their vehicles.

The defendant moves to suppress evidence seized because the affidavit fails to allege sufficient probable cause that evidence of the crimes alleged would be found contained within Mr. Hightower's car. The warrants were based upon affidavits that were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Illinois v. Gates,* 462 U.S. 213 (1983). The affidavit did not specify any relationship between Ms. Washington and Mr. Hightower, but for two letters from Mr. Hightower. The content of the letters was not shared with the issuing magistrate, likely because they were not incriminating in any way. There were no dates provided indicating any relevance to the investigation. Nothing was explained as to when or with whom "jail calls" were made. Again, the content of the calls was not provided and thus, the presumption is they were not incriminating. Essentially, law enforcement obtained a warrant to rummage through Mr. Hightower's car on the belief that people keep correspondence in their cars. But this assumes correspondence would be related to evidence of health care fraud, tampering with a witness, or obstruction of justice, the basis for the warrant request. Contrary to the bold assertion that criminals keep correspondence in their cars, the search of the BMW one month earlier did not yield correspondence. There is no probable cause that any future correspondence between these two people would contain evidence of a crime. This fishing expedition has been banned by the Supreme Court and the seized items should be suppressed.

The Affidavit incorporates a search warrant for houses associated with Aurielle Washington. A review of that Affidavit in support of the house searches does not add

any additional probable cause that the two were communicating regarding health care fraud, witness tampering, or obstruction of justice. Instead, that Affidavit notes that Mr. Hightower mentioned in a jail call that he sent a letter and Ms. Washington did not receive it despite going to one of the homes ostensibly to look for the letter. Just as glaring an omission occurred in this Affidavit as the Affidavit to search Mr. Hightower's car. Law enforcement had only a hunch that there may be something of interest in the correspondence. They could not detail any facts for an issuing magistrate to review to make his or her own independent assessment as to probable cause.

The Affidavit to search Ms. Washington's houses also incorporated an Affidavit to search the person of Ms. Washington and her phone. While this Affidavit goes into much detail regarding telephone calls by Mr. Hightower to Ms. Washington and one call in which Davon Carter got on the phone, they still do not add to probable cause that evidence of a crime would be in Mr. Hightower's BMW. Instead, the calls revolve around Mr. Hightower telling Mr. Carter to get his own phone; letters written to Ms. Washington; and a letter written by Mr. Hightower detailing his feelings for Ms. Washington. From the calls, the agent concluded Washington and Carter were helping Mr. Hightower on the "outside." Nothing in the calls, however, suggests Mr. Hightower was discussing or asking for assistance that could be construed as evidence of health care fraud, obstruction of justice, or witness tampering. On the contrary, Mr. Hightower noted he was writing about his legal work. This Affidavit, like the others, fails to state probable cause that evidence of health care fraud or witness tampering would be within the BMW.

Just like the June 7 Affidavit, this second Affidavit for the BMW search warrant fails to establish a sufficient nexus between alleged criminal conduct and the place to be

searched.  See, *United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988) (forbidding general warrants), *United States v. Lalor,* 996 F. 2d 1578, 1583 (4th Cir. 1993) (warrant was deficient for failing in a drug case to set forth a nexus for the residence).

The last clause of the Fourth Amendment contains a "particularity requirement," which "is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant."  *United States v. Dargan,* 738 F.3d 643, 647 (4th Cir. 2013), quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010).  "It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980).  The Framers' horror of "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (plurality op.), led them to include the Particularity Clause in the Fourth Amendment. This Clause requires that a warrant must "particularity describe the place to be searched and the persons or things to be seized." The warrant of Mr. Hightower's BMW relies solely upon boiler plate language that alleges in conclusory form that the Affiant knows people keep correspondence in their cars.  There is absolutely nothing specific that sets out probable cause that Mr. Hightower's car would likely contain evidence of a crime.  The items taken from the BMW should be suppressed as evidence at trial.

### D.  SEARCH WARRANT FOR SILVER 2008 AUDI

On August 24, 2016, Agent Fuchs obtained a search warrant for Mr. Hightower's 2008 Audi which was located at an autobody shop.  The purpose of the warrant was to

search for evidence of the witness tampering/murder on May 27, 2016.  Like the Affidavits for the BMW, this Affidavit lacks sufficient probable cause.  The facts presented detailed the circumstances of the murder and that the victim lived next door to a potential witness against Mr. Hightower; that Mr. Carter was associated with a Pontiac believed to be leaving the crime scene; that Mr. Carter was stopped by police in a BMW registered to Mr. Hightower 5 days after the murder; that an Audi was also on video in the area of the crime scene; that Mr. Carter was driving an Audi on the morning of the murder; that Hightower was "like family" to Carter; that Carter lied about his whereabouts after the murder; that Hightower tried to call him on June 2, 2016 from a jail; that Hightower told his paramour on June 8 that he didn't know what he was doing- presumably referencing Carter; and that the paramour questioned "why he was doing whatever" in his car.  The Affidavit sets forth probable cause to believe Mr. Carter had something to do with the murder.  What is missing is any indication Mr. Hightower was involved in the murder or that his car would have evidence within it just under three months later.  The Audi was not in Mr. Carter's possession from June 15, 2016 until the search in August 2016.

There is nothing detailed in the Affidavit that would give law enforcement reason to believe evidence would be found in this particular Audi. The murderer did not shoot from an Audi. The only reference to the Audi was that *an Audi* was seen on a video *in the area* of the murder. On the face of this warrant, any Audi with an association to Mr. Carter could have been searched.  There must be more to indicate why this Audi was believed to have been associated with the crime.

Any evidence should be suppressed even if there was sufficient probable cause because the information was stale. As noted above, the search occurred just under three months after the crime and the Audi had been in an autobody shop since June 15, 2016. The fourth amendment bars search warrants issued on less than probable cause, and there is no question that time is a crucial element of probable cause. A valid search warrant may issue only upon allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. McCall,* 740 F. 2d, 1331, 1335-36 (4th Cir. 1992) quoting *Sgro v. United States*, 287 U.S. 206, 210-11 (1932). The Court of Appeals noted:

> Cases in which staleness becomes an issue arise in two different contexts. First, the facts alleged in the warrant may have been sufficient to establish probable cause when the warrant was issued, but the government's delay in executing the warrant possibly tainted the search. *Citations omitted.* A reviewing court's task in each category of cases is slightly different. In testing a warrant in the first category, it must decide whether a valid warrant became invalid due to the lapse of time; when considering those in the second category, it must determine whether information sufficient to constitute probable cause was ever presented. The court's fundamental concern, however, is always the same: did the facts alleged in the warrant furnish probable cause to believe, at the time the search was actually conducted, that evidence of criminal activity was located at the premises searched?

*McCall*, at 1336. In McCall, the magistrate judge knew that the evidence searched for – a readily identified government stolen service revolver would be difficult to pawn or sell and that McCall had not disposed of the weapon during the twenty-month interim between the robbery and his confession to another. The Court of Appeals found that the magistrate was justified in drawing the inference that McCall probably still possessed the incriminating evidence in the apartment where it had been seen. This type of evidence was not too stale to furnish probable cause. The search of Mr. Hightower's Audi, however, was based upon an Affidavit that listed no information as to why any evidence

would still be in the car and thus, the warrant was based upon stale information at the time the warrant was executed.

### E.  SEARCH WARRANT OF YAHOO ACCOUNT

#### 1.  The affidavit failed to set forth sufficient probable cause.

On April 7, 2017, Agent Fuchs obtained a warrant to search Yahoo! Account matthewwhight@yahoo.com. Probable cause is based upon the agent's belief that Davon Carter, a long-time associate of Mr. Hightower, and Clifton Mosely committed the witness killing on 5/27/2016.  The agent also included that Mr. Hightower attempted to contact Mr. Carter 16 times from the jail on 6/2/16.  In a call with "Boo," Mr. Hightower denied knowing what Carter was doing and Boo wondered why Carter did anything in Hightower's car (presumably related to the traffic stop of Carter in Mr. Hightower's BMW days after the murder). The agent detailed a suspected motive for Mr. Hightower by suggesting the intended victim of the homicide was a witness against him in the health care fraud case.  The Affidavit also contained information that on July 25, 2015, Mr. Hightower contacted witnesses Lisa Edmonds and Belinda Turner using the Yahoo! Account.  One unidentified "witness" indicated Mr. Hightower used this account to talk about his health care fraud case.  None of the contacts were alleged to be anything more than a violation of the court order not to contact witnesses. None of the contacts with proposed witnesses had anything to do with the purpose of the warrant – to search for evidence of witness tampering.   The Affidavit failed to set forth specific probable cause as to why the agent believed Mr. Hightower used this account to discuss the witness tampering case.  For the same reasons set forth above about the other searches, evidence derived from Yahoo! should be suppressed as not sufficient to satisfy probable cause,

particularity of the place to be searched, and the nexus between this account and the witness tampering.

### 2. The warrant was overly broad.

The warrant was overly broad and thus, evidence should be suppressed. Under the Fourth Amendment, a warrant must be "no broader than the probable cause on which it is based." *United States v. Hurwitz,* 459 F. 3d 463, 473 (4th Cir. 2006). In attachment B to the warrant, the government first requested everything to do with this account- not, for instance, information regarding the witness tampering. On page 1 of Attachment B. the government requested disclosure of everything related to the account. On page 3, the government requested to seize a more limited amount of information. The search, however, required full disclosure of everything and the government seized the entirety of the account records from Yahoo!. The Search Warrant Order was issued based upon the more limited requests to seize. By seizing the entirety of the account records, the government exceeded the scope of the warrant. Federal Rule 41 (e)(2)(B) permits the government to seize stored electronic data for later review. The rule, however, does not allow the government to exceed the scope of the warrant. *United States v. Phillips*, 588 F.3d 218 (2003), *United States v. Kimble,* 855 F. 3d 604 (4th Cir. 2017). See also, *United States v. Zelaya-Veliz et al.*, 94 F. 4d 321 (4th Cir. 2024).

Despite Rule 41, the government must promptly search the information and return nonresponsive records to ensure compliance with the Fourth Amendment. The amount of time between search and then the completion of review of electronic data must be within a reasonable period. *United States v. Wray*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (collecting authority). Here, the government ignored the limitations it promised to follow

and instead, engaged in an unconstitutionally overbroad seizure of Mr. Hightower's communications.  See also, *United States v. Cauthorn,* JKB 1:19-cr-00036, ECF 986.

The government has ignored the limitations contained in its own warrant application.  The account was obtained in April 2017, some seven years ago and nothing has been returned to Mr. Hightower, or, upon information and belief, to Yahoo!. Ongoing access to search through the data would be unreasonable.  *Id.*, at 4.

WHEREFORE, Mr. Hightower respectfully requests that this Court suppress all evidence obtained by law enforcement authorities as the result of the illegal searches and seizures.

Respectfully submitted,

_____-s-_____
Teresa Whalen
Law Office of Teresa Whalen
801 Wayne Ave., Ste. 205
Silver Spring, MD 20910
301-728-2905 [cell]

_____-s-_____
Daniel H. Goldman
421 King Street, Suite 505
Alexandria, VA 22314
(202) 251-5063 [cell]