IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES | * |
| | * |
| | * |
| | *   Criminal Case No.: SAG-23-186 |
| v. | * |
| | * |
| MATTHEW HIGHTOWER | * |
| | * |
| | * |

* * * * * * * * * *

## MEMORANDUM OPINION

As the June 16, 2025 trial date quickly approaches in this complex murder and witness tampering case, Defendant Matthew Hightower has filed a motion to dismiss the indictment, ECF 68, and a motion to suppress evidence obtained from searches of two cars. ECF 70. The Government opposed both motions. ECF 76, 75, 79. Mr. Hightower replied. ECF 80, 81, 82. At a motions hearing on April 3, 2025, this Court heard legal argument and witness testimony relating to each motion. ECF 83. The Court has carefully considered the parties' submissions and arguments. For the reasons stated herein, both of Mr. Hightower's motions will be denied.

I.  BACKGROUND

This case arises from a 2015 healthcare fraud case. *United States v. Hightower*, Crim. No. 15-322-LKG (D. Md.) [hereinafter *Hightower I*][1]. At that time, Mr. Hightower was indicted for Conspiracy to Commit Healthcare Fraud (18 U.S.C. § 1349) and Aggravated Identity Theft (18 U.S.C. § 1028(A)(a)). *Hightower I*¸ ECF 1. The Government filed a superseding indictment in April, 2016 adding two extortion-related charges: Collection of Extension of Credit by Extortion

---

[1] The history relevant to this case, and these motions, involves several different criminal prosecutions in this District. For clarity, the Court will denote where docket citations come from other cases. Any docket citation without a notation is from this case.

(18 U.S.C. § 894(a)) and Use of Interstate Facilities for Extortion Resulting in Death (18 U.S.C. § 1952(a)(2)(B)). The extortion murder charge pertained to the death of David Wutoh. Mr. Hightower, initially on pretrial supervision, was detained after a hearing on May 4, 2016, and has remained in custody ever since. ECF 75 at 4.

One of Mr. Hightower's former coworkers, L.E., was named as a potential Government witness at his *Hightower I* trial. The Government has referred to her as a "whistleblower" in that case. On May 27, 2016, L.A., the victim in this case, was murdered. The Government believes that the shooter mistook L.A. for L.E., who was her neighbor and had a similar appearance. The Government began investigating L.A.'s murder, and Mr. Hightower's alleged ties to the murder, despite his ongoing incarceration.

The Court severed Mr. Hightower's health care fraud charges from his extortion murder charges in June, 2016. Richard B. Bardos, Esq., who had been Mr. Hightower's lawyer throughout the case, remained his lawyer for the extortion murder charges, which proceeded first to trial. The court appointed Gary E. Proctor, Esq. to be Mr. Hightower's counsel for the health care fraud charges. Mr. Proctor, who has the qualifications to serve as learned counsel in capital cases, believes he was appointed counsel in anticipation of potential future death-eligible charges relating to L.A.'s murder.

Mr. Hightower's extortion murder trial began in September, 2016. *Hightower I*, ECF 263. L.E. testified for the Government. A jury found Mr. Hightower guilty of the extortion and extortion murder charges, and the Honorable Marvin J. Garbis sentenced him to 380 months imprisonment. *Hightower I*, ECF 358. The health care fraud charges remained stayed pending Mr. Hightower's appeal of his extortion conviction. Erek L. Barron, Esq., then in private practice, was appointed to represent Mr. Hightower on appeal. *See United States v. Hightower*, 16-4796 (4th Cir.). The Fourth

Circuit affirmed Mr. Hightower's extortion convictions and sentence on March 12, 2018. *Hightower I*, ECF 521.

Separately, the Government charged several individuals with murdering L.A. Specifically, a jury found Davon Carter and Clifton Mosley guilty of being the shooters in that murder on January 30, 2020. *United States v. Carter, et al.*, Crim. No. 17-667-SAG (D. Md.), ECF 156. United States District Judge George J. Hazel sentenced Mr. Carter to life imprisonment on May 25, 2021, *id.*, ECF 177, and Mr. Mosley to life imprisonment on September 23, 2021, *id.*, ECF 209.

Mr. Barron took office as the United States Attorney for the District of Maryland on October 7, 2021. A grand jury indicted Mr. Hightower in this case on May 18, 2023, charging him with a murder-for-hire conspiracy resulting in L.A.'s murder. ECF 1. After a full review process, on August 8, 2023, the Government filed notice with this Court that it would not seek the death penalty. ECF 14.

## II.   MOTION TO SUPPRESS

Mr. Hightower now seeks to suppress evidence obtained from two vehicle searches: (1) a BMW searched on June 1, 2016,[2] and (2) an Audi searched on August 9, 2016.[3] ECF 70. Because the Government does not intend to introduce evidence derived from the separate July 8, 2016

---

[2] Mr. Hightower's motion refers to this search as having occurred on June 7, 2016. The Government clarified that it obtained a warrant and executed the search on June 1, 2016. ECF 75 at 17 n.9.

[3] Mr. Hightower's motion refers to this search as having occurred on August 24, 2016. The Government clarified that it obtained a warrant and executed the search on August 9, 2016. ECF 75 at 21 n.12.

search of the BMW or the April 7, 2017 search of Mr. Hightower's Yahoo account, the parties agreed at the motions hearing that those portions of Mr. Hightower's motion are moot.

Each of the two vehicle searches occurred in the aftermath of L.A.'s murder, based on law enforcement officers' belief that the cars were being used by one of the shooters and owned by the person they believed hired the shooters, and therefore were likely to contain evidence relating to the murder. After considering the briefing, the parties' legal arguments from the motions hearing, and the testimony of two law enforcement officers involved in the searches, this Court finds that the searches were properly authorized by valid warrants. This Court will deny the motion to suppress.

1. BMW

    a. Background

In their investigation of L.A.'s murder, law enforcement quickly identified Mr. Carter as a suspect. As Sgt. Sean Jones explained to the Court, surveillance video from a neighboring apartment complex captured L.A.'s shooter fleeing the scene and entering a Pontiac. Law enforcement traced the Pontiac's license plate to the mother of Mr. Carter's girlfriend. On June 1, 2016, law enforcement captured Mr. Carter exiting his apartment and entering the Pontiac. His appearance was consistent with witness descriptions and the surveillance footage of the shooter. Mr. Carter then exited the Pontiac and entered the black BMW SUV that is the subject of this motion. The BMW was registered to Mr. Hightower, who at that point had been in pre-trial detention for about a month. Baltimore County Police Department Officers, including Det. Troy Taylor, were directed by supervisors to stop the vehicle. Det. Taylor, a narcotics detective, immediately noticed the strong smell of marijuana emanating from the BMW. Mr. Carter admitted to the officers that there was marijuana in a duffel bag in the back. He was placed in custody and

searched. The BCPD officers seized from the BMW a duffle bag containing large quantity of marijuana, over $7,000 in cash, and supplies consistent with drug dealing. They did not conduct a full search of the car, in part because they were aware of a forthcoming federal search warrant. Instead, investigators towed the car.

Federal law enforcement obtained and executed a federal search warrant later on June 1, 2016.

      b. *Discussion*

Mr. Hightower argues that evidence obtained from the search should be suppressed because the federal warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." ECF 70 at 2. He also argues that the warrant lacked particularity and was a verboten "general warrant." *Id.*

The Government rejoins that Mr. Hightower does not have standing to challenge the search, that the warrantless search and later search warrant were supported by probable cause, and that even if they were not, the officers acted in good faith and the evidence would have been discovered inevitably. ECF 75 at 9–15.

The Government's argument that Mr. Hightower lacked a reasonable expectation of privacy in the car due to his incarceration and other persons' control and possession of the car appears to have some merit. But at the time of the search, Mr. Hightower had only been in pretrial detention for a few weeks and was still the registered owner of the vehicle. Of course, the owner of property can nevertheless lack standing to challenge a search of that property. *Rawlings v. Kentucky*, 448 U.S. 98, 104–06 (1980). As the Government notes, several courts outside of this Circuit have found that vehicle owners surrender their reasonable expectation of privacy when they loan their vehicle to another person. ECF 75 at 10–11 (collecting cases). Ultimately, this Court

need not reach this close question, because even assuming Mr. Hightower's standing, this Court believes that both searches of the BMW were justified by probable cause. *See United States v. Ferebee*, 957 F.3d 406, 412 (noting that Fourth Amendment standing is not jurisdictional). That said, it is telling that this Court's discussion of the merits largely centers around Mr. Carter, not Mr. Hightower.[4]

When the officers stopped Mr. Carter in the BMW, they had reasonable suspicion to perform an investigatory stop. *Terry v. Ohio*, 392 U.S. 1 (1968). Mr. Carter fit the description of L.A.'s shooter and was seen entering and exiting the getaway car captured on video at the murder scene seconds before entering the BMW. Once the officers smelled the marijuana in the BMW, moreover, they had probable cause to search the vehicle without a warrant. *California v. Acevedo*, 500 U.S. 565, 569–70 (1991). The marijuana alone sufficed to provide the officers with probable cause that evidence of a crime would be found in the car. *United States v. Humphreys*, 372 F.3d 653, 658 (4th Cir. 2004) ("[W]hen marijuana is believed to be present in an automobile based on odor emanating therefrom, we have found probable cause to search the automobile."); *see also id.* at 659 (applying automobile exception to warrant requirement where probable cause stemmed from marijuana odor).

The warranted search, too, was supported by probable cause. The affidavits include detailed discussion of the events surrounding L.A.'s homicide, Mr. Carter's connection to the homicide, Mr. Carter's connection to Mr. Hightower, and Mr. Carter's connection to the BMW. ECF 75 at 17–18. The warrant sought to search the BMW for eight specific categories of evidence

---

[4] Judge Hazel denied a very similar motion to suppress the search in Mr. Carter's case. *United States v. Carter*, ECF 92. Although this Court is not bound by that decision, it reaches the same result.

relating to the homicide investigation, and Mr. Carter and Mr. Hightower's possible connections to the murder. *Id.* at 19 (screenshot of Attachment B to warrant application). The issuing magistrate judge's finding of probable cause was well-supported by the affidavit's thorough recounting of the evidence obtained at that point in the homicide investigation, and in particular the connections between the searched BMW and the prime suspect in the murder. The warrant did not authorize a general search, but rather was based on a finding that particularized forms of evidence were likely to be found in the BMW.

Finally, even if the warrant were invalid, law enforcement reasonably relied on it in good faith. *United States v. Leon*, 468 U.S. 987, 992 (1984). Similarly, because the marijuana gave law enforcement independent probable cause and authorization to search the entire car, the evidence would have been inevitably discovered.

   2. Audi

      a. *Background*

On May 16, 2016, about ten days before L.A.'s murder, local police stopped Mr. Carter driving an Audi without its registered plates (which had been replaced with a long, European-type license plate). Although the Audi was registered to the brother of a woman believed to be Mr. Hightower's girlfriend, Mr. Hightower maintains he was the actual owner of the car. The Audi was also spotted on video near the scene of the murder on May 27, 2016. In August, 2016, investigators learned that the Audi—still bearing a long, European-type license plate—had been located in the garage of an auto shop. As the Government clarified at the motions hearing, law enforcement had seized the Maryland license plate registered to the Audi from the BMW in early June. The Government obtained and executed a search warrant for the Audi on August 9, 2016.

7

    *b. Discussion*

Mr. Hightower argues that the affidavits in support of this warrant were woefully lacking in indicia of probable cause, and thus that a reasonable officer would not have believed in the existence of probable cause. ECF 70 at 6. Because the ties between Mr. Carter to the Audi are somewhat attenuated, he argues, officers did not have probable cause that evidence relating to the murder would be located in the car. *Id.* He also takes issue with the three-month time gap between the murder and the search of the car. *Id.* at 7.

The Government rejoins that Mr. Hightower does not have standing to challenge the search, that the warrant was supported by probable cause, and that if it was not, the officers acted in good faith. ECF 75.

Again, the Government's argument that Mr. Hightower lacked a reasonable expectation of privacy in the car due to his incarceration and other persons' control and possession of the car appears to have some merit. Mr. Hightower was not the registered owner of the vehicle and had been in pre-trial detention for three months by the time of the search. Mr. Hightower nevertheless argues that he continued to exercise control over the vehicle from jail and fully intended to return to it. Here too, this Court need not reach this question, because even assuming Mr. Hightower's standing, this Court believes that the search was justified by probable cause. *See Ferebee*, 957 F.3d at 412.

The warrant was based on ample probable cause. The affidavits attached to the warrant application described in detail Mr. Hightower's motive for the murder, that Mr. Carter had been seen driving the Audi and its presence at the scene of the murder, all of the evidence underlying the warrant for the BMW search, more information about the close relationship between Mr. Hightower and Mr. Carter, and statements from Mr. Hightower's girlfriend about Mr. Carter's use

of the Audi and Mr. Hightower's request that she take the Audi to an auto shop. ECF 75 at 22–23. The application also specified several categories of evidence law enforcement believed may be found in the Audi. *Id.* at 24 (screenshot of attachment B-2). All of this information supports the issuing magistrate judge's conclusion that probable cause existed, and the warrant was drawn with sufficient particularity.

As to Mr. Hightower's argument regarding staleness, moreover, this Court agrees that the concealment of the Audi in the auto shop from June to August, 2016 supports the Government's belief that evidence of the crime on May 27, 2016 was likely to still be in the vehicle. *See United States v. McCall*, 740 F.2d 1331, 1336–37 (4th Cir. 1984).

Finally, even if there had not been sufficient probable cause, law enforcement reasonably relied on the apparently valid warrant in good faith when they conducted their search. *Leon*, 468 U.S. at 92. Accordingly, Mr. Hightower's motion to suppress must be denied.

### III.  MOTION TO DISMISS

The other pending motion is Mr. Hightower's motion to dismiss the complaint, in which he cites a conflict of interest on the part of his former defense counsel, who served as United States Attorney for the District of Maryland through most of the pendency of this case, Erek L. Barron, Esq. As noted above, prior to becoming the United States Attorney, Mr. Barron worked as a defense attorney and was Mr. Hightower's court-appointed attorney for his appeal of his federal extortion murder conviction. Of course, that prior representation is factually related to the instant case because Mr. Hightower is charged in this case with soliciting the murder of a whistleblower witness in that prior case.

It is beyond dispute that, as Mr. Hightower's former attorney, Mr. Barron had a conflict of interest in prosecuting his subsequent, related federal murder case. Maryland Rule 19-301.9, which

is essentially identical to the American Bar Association Rule of Professional Conduct 1.9, states that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in…a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Md. R. 19-301.9. Mr. Barron did not seek Mr. Hightower's consent and therefore had a conflict of interest.

In light of Mr. Barron's conflict, the evidence amply demonstrates that Mr. Barron and the United States Attorney's Office ("USAO") did not take the steps they should have taken to formally recuse him from Mr. Hightower's case. The Justice Manual, at Section 3-1.140,[5] specifies that the decision whether to recuse a United States Attorney or his office rests with the designated Associate Deputy Attorney General. Where recusal is warranted, the General Counsel's Office "will coordinate the recusal action, obtain necessary approvals for the recusal, and arrange for a transfer of responsibility to another office." *Id.*[6] Mr. Barron and his office knew of these protocols. In another recent prosecution, *United States v. Kenneth Ravenell*, Crim. No. 19-00449-TDC, Mr. Barron formally recused himself from the case and the documents filed by the Government were signed under the name and title of Mr. Barron's First Assistant United States Attorney ("FAUSA").

None of that happened, in a timely manner, in Mr. Hightower's case. Instead, the evidence the Government offers to support its contention that Mr. Barron was "walled-off" is limited to a series of emails showing that on December 30, 2022 at 11:40 am, the AUSAs working on the case forwarded Mr. Barron a memorandum they proposed to send to the Capital Case Unit regarding

---

[5] *Available at* https://perma.cc/D5LS-R2FU.

[6] The Maryland USAO eventually took these steps in the Hightower case, but not until the instant motion was pending in 2025. ECF 76 at 8 n.4.

10

Mr. Hightower's prosecution. ECF 76-3. That same day, at 11:46 am, Mr. Barron accessed a Dropbox account that had been set up by Mr. Hightower's previous defense counsel, Gary Proctor, and Jennifer Smith, a then-law clerk and now associate at Mr. Proctor's firm. Mr. Proctor and Ms. Smith testified during the motions hearing that the contents of the Dropbox included docket filings, discovery provided by the Government, relevant newspaper articles, and attorney notes (including investigation plans and notes from client meetings). They also testified that they provided Mr. Barron access to the Dropbox when he was appointed to represent Mr. Hightower in his appeal. The evidence before the Court indicates that Mr. Barron accessed the jail visit request file on December 30, 2022 and does not show that he accessed anything else.[7] Minutes after he accessed the Dropbox, at 11:52 a.m., Mr. Barron contacted the prosecutors on the case, along with his office's ethics attorney, to advise that he believed he had served as Mr. Hightower's defense attorney in the past and should be recused from the prosecution. ECF 76-3. His FAUSA took over the office's communications with DOJ regarding the determination whether the death penalty would be sought. *Id.*

The Maryland USAO continued with its prosecution of Mr. Hightower. The indictment, returned on May 18, 2023, was hand-signed "Erek L. Barron/AZ" by the Assistant United States Attorney handling the matter, Aaron Zelinsky. ECF 1. In contrast, the press release issued the next day by the United States Attorney's office contained quotes from the FAUSA, not Mr. Barron himself. ECF 76-10. As the case proceeded, a number of letters and court filings bore the Office's standard signature block, with Mr. Barron's name and title above that of the AUSA signing the

---

[7] However, it is unclear from the record before this Court whether Dropbox reveals every file a user accesses on a particular date, or simply the last one accessed. In the absence of any evidence from Mr. Barron about his actions, this Court is left to speculate about his conduct.

11

document. *See, e.g.*, ECF 82-5, 82-6. But on multiple occasions, leadership in the U.S. Attorney's Office and the line prosecutors reiterated Mr. Barron's recusal and that all communications regarding the case should go to the FAUSA. *See, e.g.*, ECF 76-8 ("USAO Barron is recused from this matter…The decision should go only to [FAUSA]."); ECF 76-4 ("Erek is conflicted out of Hightower."); ECF 76-3 ("[I]t will go to [FAUSA]."). The line prosecutors were also told more than once to ensure that the FAUSA's name appeared on memoranda, and the indictment. *See, e.g.*, ECF 76-4 ("Please make sure any future memos or sign-off's use [FAUSA]'s name. I think this would impact the indictment signature line as well."); ECF 76-5 (email from FAUSA) ("Since Erek is recused can you make sure the team updates the memo to the AAG with my information as well as the indictment."); *id.* (email to line prosecutors) ("[C]ould you please change the memo to reflect that [FAUSA] is acting under authority conferred by 28 U.S.C. § 515?"). In subsequent communications, the FAUSA filled the role of the U.S. Attorney. *See, e.g.*, ECF 76-5 (approving Capital Case Unit memorandum); ECF 76-9 (email from Main Justice to FAUSA authorizing Maryland USAO to proceed with non-capital case); 76-10 (press release noting the FAUSA is announcing charges).

With that background, Mr. Hightower's current arguments are twofold. First, he contends that, as a result of Mr. Barron's conflict, the entire Maryland USAO needed to recuse from prosecuting his case. Second, he argues that his due process rights have been violated because he

has been deprived of a "disinterested prosecutor" as a result of Mr. Barron's alleged involvement in his case.[8] For the reasons set forth below, this Court disagrees on both counts.

Mr. Hightower's contention regarding disqualification of the entire USAO lacks support in the case law and in the governing ethical rules. Like the ABA Rules of Professional Conduct, Maryland promulgated a separate rule governing the conduct of current government attorneys. That rule, Maryland Rule 19-301.11(d), provides that such attorneys are subject to Rules 19-301.7 and 19-301.9, providing that they cannot personally participate in cases where they have a conflict of interest involving former clients. It does not extend Rule 19-301.10 to current government employees. Rule 19-301.10 is the rule that extends one attorney's conflict to his colleagues "while lawyers are associated in a firm." Courts have reasoned that applying that extension rule in a government context would be nonsensical, because the common financial interest for those associated in a law firm does not apply to government attorneys. *See, e.g.*, *United States v. Caggiano*, 660 F.2d 184, 190–91 (6th Cir. 1981) ("There is, of course, quite a difference in the

---

[8] At the hearing, both parties argued that the other was on the wrong side of a "burden shifting" analysis that this Court should employ. This case, however, presents in a novel posture. The parties' cited cases either seek recusal of a prosecutor or seek to invalidate a conviction after trial. This case, in contrast, is a motion to dismiss a pending indictment with prejudice before trial. This Court believes that, in this context, the burden rests with the defendant, as the movant, to establish that a prejudicial violation of his due process rights justifies the extraordinary relief sought. *See, e.g.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) ("[A] district court may not dismiss an indictment for errors in grand jury proceedings [due to prosecutorial misconduct] unless such errors prejudiced the defendants."); *United States v. Mechanik*, 475 U.S. 66, 69 (1986) ("[T]he District Court would have been justified in dismissing portions of the indictment [for violation of Fed. R. Crim. P. 6(d)] had there been actual prejudice."); *United States v. Feurtado*, 191 F.3d 420, 424 (4th Cir. 1999) ("[A] defendant is entitled to dismissal of an indictment only where actual prejudice is established."); *United States v. Malloy*, 568 F.3d 166, (4th Cir. 2009) ("A mere variance does not violate a defendant's constitutional rights unless it prejudices him."); *Barker v. Wingo*, 407 U.S. 514, 521 (1972) ("[D]eprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself.").

13

relationship between law partners and associates in private law firms and lawyers representing the government.… The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice." (quoting ABA Comm. On Prof. Ethics Form. Op. 342, 62 A.B.A.J. 517 (1976))); *United States v. Hubbard*, 493 F. Supp. 206, 208 (D.D.C. 1979) ("[T]he members of an Office of a United States Attorney have no interest in the success of the litigation of their associates as do members of a private firm."); *United States v. Farrell*, 115 F. Supp. 3d 746, 764 (S.D.W. Va. 2015) (declining to impute personal conflict of AUSA to entire USAO); *United States v. Goot*, 894 F.2d 231 (7th Cir. 1990) (affirming decision not to recuse entire USAO based on U.S. Attorney personal conflict).[9] Mr. Barron's conflict, then, would not have impacted the other members of his office and would not preclude their prosecution of this case without his personal involvement.

This Court turns, then, to the issue of whether Mr. Hightower's due process rights have been impacted by Mr. Barron's involvement in his prosecution. Mr. Hightower argues the "categorical rule against appointment of an interested prosecutor" elucidated in *Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787, 811 (1987) is dispositive. This case, however, is readily distinguishable. In *Young*, the district court appointed counsel for one party in a civil case to prosecute a criminal contempt proceeding against the opposing party. Reasoning that "a private attorney appointed to prosecute a criminal contempt should be as disinterested as a public prosecutor," the Supreme Court determined that in *Young*, the attorney's personal interest caused

---

[9] Mr. Hightower relies on *Goot* for the proposition that proof of prejudice is not required where there is an actual conflict of interest. The defendant in *Goot* was not seeking dismissal with prejudice. As this Court noted above, the Supreme Court and Fourth Circuit have repeatedly found that dismissal with prejudice requires proof of prejudice to the defendant.

14

"actual bias" in the criminal contempt trial. *Id.* at 804. *Young* adds little to the analysis here, as this case does not involve an appointed prosecutor personally involved with the case. Instead, the pertinent question is the role that Mr. Barron played in the prosecution and whether any actual bias existed.[10]

Ultimately, although he readily established that the USAO mishandled Mr. Barron's conflict in this matter, Mr. Hightower has not met his burden to show that he has been deprived of his right to trial by an impartial prosecution. The record before this Court shows that Mr. Barron's name appears in multiple signature blocks and that Mr. Barron accessed one file in the defense-created Dropbox in December 2022, immediately before he informed the prosecution team and his ethics counsel that he had a conflict of interest. As described above, the record also shows repeated reminders from the USAO to its trial prosecutors to use the name of the FAUSA, not Mr. Barron, on letters and filings. Although those reminders went unheeded on occasion, those facts do not permit a reasonable inference that Mr. Barron had personal involvement in the case or accessed confidential information for the purpose of providing it to the prosecutors. In fact, the only file known to have been accessed within the Dropbox is one that a person would access if trying to figure out whether or not he had visited the client in jail, for purposes of confirming his prior representation. Mr. Hightower has adduced no evidence, and this Court is unwilling to presume, that Mr. Barron accessed any of the rest of the Dropbox information.

---

[10] This Court notes that, whether intentionally or not, Mr. Hightower exacerbated the problem of the appearance of impropriety by failing to raise this issue with the Government or the Court, or to seek Mr. Barron's recusal, back in July 2023, when he and his lawyers first discovered it. Current counsel contacted Mr. Proctor and Ms. Smith on July 19, 2023. Until July 28, 2023, when ECF 10 was filed, only the indictment bore Mr. Barron's name. By the time Mr. Hightower filed his motion to dismiss citing this basis, on January 23, 2025, the government had filed a number of additional documents bearing its standard signature block with Mr. Barron's name at the top.

Finally, even if some relief had been warranted, this Court does not find that either of the two remedies Mr. Hightower seeks would be appropriate: dismissal of the indictment with prejudice or exclusion of any evidence residing in the Dropbox account.[11] Mr. Hightower has not demonstrated that Mr. Barron's conflict resulted in any taint affecting his prosecution or any access by Mr. Barron to confidential defense materials for use in the prosecution. *See United States v. Shah*, 43 F.4th 356, 363 (3d Cir. 2022) ("Because actual taint must be shown, the mere 'appearance of impropriety' is insufficient to support disqualification of an entire office."). The only "harm" that has been shown is one of public perception: it appears, from a cursory review of the docket, that Mr. Hightower's former attorney played a role in his prosecution from May, 2023 through January, 2025. Of course, that "public perception" harm could have been ameliorated entirely had Mr. Hightower and his counsel raised the recusal issue with the Government or the Court when they discovered it by July of 2023.[12] In the absence of any showing of taint or actual harm, this Court believes that dismissal of the indictment would be a grossly excessive penalty, in a sense rewarding Mr. Hightower's decision not to address the conflict of interest he discovered and to thereby only increase the degree of "appearance prejudice" he can now cite. And the alternative remedy he seeks, to prevent the Government from using any information contained in the Dropbox, is simply unwarranted and unconnected to the alleged transgression. From the testimony of the attorneys who created the Dropbox, much of the stored information is either publicly available

---

[11] At the hearing, Mr. Hightower's attorney explained that he expressly does not seek, and does not want, dismissal of the indictment without prejudice.

[12] At the hearing, Ms. Smith testified that Mr. Hightower's current counsel first asked her about the Dropbox account on July 19, 2023. At that point, Ms. Smith captured the screenshot showing Mr. Barron's December, 2022 access and terminated his access going forward.

(such as news articles and docket filings) or records provided in discovery from the Government to defense counsel.[13] The mere fact that Mr. Barron had the ability to access that information, which is well within the Government's possession already, provides no reason to exclude it from use at trial.

This Court, of course, does not condone the USAO's and Mr. Barron's improper handling of his conflict of interest in this case. But for the reasons described, that improper handling alone, with no showing of other prejudice, does not support dismissal of the indictment with prejudice or the alternative exclusionary remedy sought. Finally, because Mr. Barron stepped down as United States Attorney on February 12, 2025, he will have no further involvement as this case proceeds to its long-scheduled trial on June 16, 2025.

## IV.  CONCLUSION

For the reasons stated above, Mr. Hightower's Motion to Suppress Searches, ECF 70, will be denied, and his Motion to Dismiss the Indictment, ECF 68, will also be denied.

A separate Order follows.


Dated: April 10, 2025                              /s/
                                        Stephanie A. Gallagher
                                        United States District Judge

---

[13] Of course, Mr. Hightower will be permitted to renew this motion in the unlikely event that the Government seek to introduce evidence that appears to be derived uniquely from confidential material within the Dropbox account (such as notes from attorney meetings). But the Government's possession of evidence it had in the first instance does not suggest that Mr. Barron engaged in any impropriety.