**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CASE NO:   SAG-23-00186** |
| **MATTHEW HIGHTOWER,** | |
| Defendant. | |

**GOVERNMENT'S MOTION TO ADMIT INTRINSIC EVIDENCE OR IN THE ALTERNATIVE PURSUANT TO RULE 404(b)**

The United States hereby files a motion for a pretrial ruling regarding the admission of intrinsic evidence at trial or in the alternative, pursuant to Rule 404(b) of the Federal Rules of Evidence.

**I.   FACTUAL BACKGROUND**

On September 22, 2013 at 2:45 am, David Wutoh was shot and killed in his home in Baltimore County.  Mr. Wutoh was a friend of Harry Crawford, who along with Elma Myles owned a small, durable medical supply company called RXRS Resources ("RXRS").  The defendant, Matthew Hightower, worked as a delivery driver for RXRS, delivering medical supplies to patients.  That same month, an employee of RXRS called federal authorities to report what the employee suspected was a health care fraud scheme occurring at the company.  That employee was interviewed by Health and Human Services special agents in November of 2013 and then again by a detective with the Baltimore County Police Department in December of 2013.

Before the employee ever reported suspicions over the company's practices, Hightower was concerned that the employee could be trouble.  In a jail call on April 15, 2013 between longtime friend, Davon Carter (who was incarcerated at the time), and Hightower, Hightower complains to Carter about how the employee accused Hightower of committing fraud at the

2

company.  In response, Carter says, "God damn she seem like she gonna go tell someone, get some people caught up."

On February 4, 2014, agents from Health and Human Services executed search warrants at RXRS and the residences of its owners, Harry Crawford and Elma Myles.  In a jail call on February 26, 2014 between inmate Davon Carter and Hightower, Hightower tells Carter that the company was "raided…somebody gave them word that they was doing some illegal shit around here.  As far as billing and shit like that."  In the same call, Hightower tells Carter about his boss's "homeboy" that was killed (referring to David Wutoh).

In another jail call on March 15, 2014 between inmate Davon Carter and Hightower, Hightower tells Carter about the federal investigation, "there was a lady that was working there a couple years ago.  She got fired…I think she, like, tried to call the government and tell them we was doing shit that we wasn't supposed to be doin'.  So now they doing an investigation…" Hightower goes onto say, "…it probably all stem from that lady.  She probably went there saying, reported that it was some you know illegal shit going on…"  In the call, Hightower explains to Carter that the employee accused Hightower of mishandling the delivery tickets for medical supply orders.[1]

On June 3, 2015, a federal grand jury in the District of Maryland indicted the defendant, Matthew Hightower, along with Harry Crawford and Elma Myles, for their role in a health care fraud scheme at RXRS Resources.  15-CR-322.  On June 17, 2015, Hightower had an initial appearance and detention hearing.  Hightower was released pre-trial on conditions to include 24/7 electronic home monitoring.  On June 18, 2015, the court issued an order setting conditions for

---

[1] The allegations in the federal healthcare fraud case were that Crawford and Myles billed for durable medical equipment like incontinence products and wheelchairs that were never delivered to patients, and that as the delivery driver, Hightower falsely documented deliveries that never happened.

pre-trial release, including no contact with anyone who could be a witness in the case. On July 2, 2015, the government produced discovery to Hightower's counsel including a Baltimore County police report of an interview with the name of the witness who had reported the health care fraud scheme to federal law enforcement. This Baltimore County police report summarized the witness' knowledge of the fraud scheme as well as the witness' knowledge of threats made by Hightower to David Wutoh, a friend and associate of Harry Crawford, to whom Hightower lent a large sum of money. The employee told detectives that Hightower had talked about Wutoh owing him money, and that Hightower was getting angry over the debt. The employee quoted Hightower as saying, "If he don't pay me the money, I'm going to burn him."

Recorded jail calls from 2013 corroborate the RXRS employee's statements to police. In a jail call between inmate Carter and Hightower on June 10, 2013, Hightower complains to Carter about his boss's friend, "I loaned him 15 and he supposed to give me 20 back last Tuesday and he aint come through… I just texted my boss like man you make me look bad cause you set the whole thing up and co-signed that he was gonna show up…" Carter responds, "Tell your boss man I'll be home in a year and half man, don't make me have to come holler at him God damn. Man tell your boss don't make me come out there…" In the call, Hightower compares the situation to the movie "Empire,"…to which Carter replies, "white boy play the game."[2] Hightower says, "that's what I told my boss, I said 'man y'all trying to do me like that?'" Carter tells Hightower during this call, "He playing games. Might have to uh, you might have to go holler at yo with some goons beside you man. With some toasted bread man. Go in there, yea what's up. You know what I'm saying? I don't want this to have to get ugly man but, you know, what's good." Mr. Wutoh was

---

[2] In the 2002 movie Empire, the lead character is a drug dealer who is persuaded to give a large amount of money to an investment banker for an investment opportunity. The investment banker disappears with the money and is ultimately hunted down by the lead character, shot and killed. https://en.wikipedia.org/wiki/Empire_(2002_film).

4

murdered on September 22, 2013 at 2:45 am, shot multiple times through his living room window and killed.

After Hightower was indicted on the health care fraud charges in June of 2015, the government immediately began to provide discovery materials to his attorney. As witnesses will testify, the company was small, no more than six or seven employees at a time. It was not difficult to figure out the identity of the whistleblower. On July 25, 2015, Hightower emailed the former RXRS employee (who had reported the fraud) out of the blue and asked that the witness call him.

Beginning on September 30, 2015 and over the course of multiple hearings, the government sought to have Hightower detained pending trial, advising the court that Hightower was the target of the Wutoh murder investigation. Hightower remained on pre-trial release.

On April 19, 2016, a federal grand jury returned a superseding indictment charging Hightower and Crawford with extortion and use of interstate facilities for extortion resulting in the death of David Wutoh. 15-CR-0322. (ECF 143, 146). On Friday, April 29, the government filed another Motion to Revoke Hightower's release conditions – this time based on the new extortion/murder charges and because Hightower had contacted witnesses during the investigation. A detention hearing was held at approximately 11:00 a.m. on May 4, 2016. Hightower was detained, and has been incarcerated since that time. On May 5, 2016, Hightower talked to his girlfriend, A.W. over recorded jail calls about the fact that he had spoken to witnesses.

In a recorded jail call from Hightower to his girlfriend, A.W. on May 7, 2016, Hightower explained that the evidence against him in the Wutoh murder is a "cellphone ping near the area."[3] She responds, "Don't talk." In another recorded jail call on that same day, Hightower asked A.W.

---

[3] Cell site information introduced at Hightower's extortion murder trial showed that Hightower's cellphone number hit off a cell tower at approximately 2:52 a.m. in the vicinity of the victim's house based on a call Hightower received from his live-in girlfriend, Michelle Fleming. The 911 call occurred at approximately 2:54 a.m.

5

to get him "Davon" and "C"'s phone numbers (referring to Davon Carter and Clifton Mosley).

The government intends to introduce witness testimony and evidence that Davon Carter was like family to Hightower, and that after Hightower was detained in May of 2016, he turned over his marijuana trafficking business to his longtime friend and close associate Davon Carter. In order to do so, Hightower needed to connect Carter with Hightower's marijuana source and Hightower's customers. Hightower also gave Carter access to his vehicles while Carter collected money from drug customers and ran other errands for Hightower.

Hightower continued to stay in contact with Carter and Mosley throughout May of 2016 leading up to the murder of Latrina Ashburne. In a recorded jail call on May 16, 2016, Hightower spoke to both Carter and Mosley who told Hightower that they "hopped in your car to come to IHOP."[4] During the call, Mosley assured Hightower "shit gonna be alright dog…you know what I mean?" Later Mosley said, "So you know, everything gonna be good, yo…You know what I mean? I'm gonna hold you down. You know what I mean on my end." By then a plan was in motion and this in-person meeting between Carter and Mosley gave the men an opportunity to speak freely without being recorded. The next day, May 17, 2016, Hightower called Carter and asked if "Black" (Mosley) was good." Hightower went on, "I know what you had said the other day, that's all. That's why I want to make sure, you know what I mean." Hightower was worried that that Mosley would not come through for him. This is evidenced in a subsequent recorded jail call on May 23, 2016 from Hightower to Carter in which Hightower told Carter, "Man tell Black (Mosley) man make sure he ain't you know, slacking on that man cause he's like I don't know yo he's making me feel kind of leery man… I just want to make sure he ain't playing around and shit, you know… You know shit be real…"

---

[4] Later in this same morning, a Baltimore County Police Officer conducted a traffic stop of Davon Carter who was driving Hightower's 2008 silver Audi with a European style front tag 03591CG.

On May 25, 2016, Carter began using a pre-paid flip phone in which he saved contact information for "C" (Mosley). Carter and Mosley were in contact the evening of May 26 and first thing in the morning on May 27. The government will establish through evidence that includes cell site location information (CSLI) for Carter's flip phone and Mosley's phones, apartment security surveillance video, and witness testimony, that Carter and Mosley met up approximately a block away from the former RXRS employee's home on the morning of May 27, 2016. After lying in wait, Carter shot and killed Latrina Ashburne as she approached her car to drive to the school where she was a teacher's assistant.

Immediately after the murder, the former employee from RXRS reached out to the Health and Human Services agent handling the health care fraud case and stated that their neighbor had just been shot and that she may have been the intended target. Later that same day, officers at Chesapeake Detention Facility conducted a search of Hightower's cell and recovered a piece of paper with a list of contacts that included the phone numbers for his co-conspirators, Davon Carter and Clifton Mosley, indicative of planning and preparation for the crime.

On June 1, 2016 and as part of the Latrina Ashburne murder investigation, Carter was stopped by detectives in Baltimore County driving Hightower's black BMW SUV. Inside the vehicle was a large quantity of marijuana, U.S. currency, and a Maryland license plate that belonged on Hightower's 2008 silver Audi which had been used in the Ashburne murder. The marijuana and U.S. currency was seized by Baltimore County police. Carter was arrested and interrogated by Baltimore Police Department homicide detectives about the murder. His cellphones were seized by the police as was the BMW, which was towed to a police processing bay, and searched.

On September 22, 2016, a federal jury convicted Hightower for the extortion murder of

7

David Wutoh. On May 18, 2023, a Grand Jury in the District of Maryland returned a five-count Indictment charging Matthew Hightower with Conspiracy to Murder a Witness (Retaliation), in violation of 18 U.S.C. § 1513(f), Witness Retaliation Murder, in violation of 18 U.S.C. § 1513(a)(1)(B), Conspiracy to Murder a Witness (Tampering), in violation of 18 U.S.C. § 1512(k), Witness Tampering Murder, in violation of 18 U.S.C. § 1512(a)(1)(A), and Murder for Hire Conspiracy, in violation of 18 U.S.C. § 1958(a).

## II.     LEGAL FRAMEWORK

The government submits that all of the aforementioned acts are relevant and admissible as intrinsic to the underlying criminal case as they are inextricably intertwined with and provide context to the charged offenses. *United States v. Cooper,* 482 F.3d 658 (4th Cir. 2007). Evidence intrinsic to the story of the crime does not fall under Rule 404(b)'s prohibition. *Id*. Acts are intrinsic to the conduct being prosecuted "when they are [i] inextricably intertwined or [ii] both acts are part of a single criminal episode or [iii] the other acts were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996). Evidence "is inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *See United States v. Lighty,* 616 F.3d 321, 352 (4th Cir. 2010) (internal quotation marks omitted). Evidence is also intrinsic when it "serve[s] to complete the story of the crime on trial." *See United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994).

The prior conduct listed above, however, is also admissible as 404(b) evidence of the defendant's modus operandi, opportunity, preparation, knowledge, intent, identity, motive, planning, and the absence of mistake with respect to allegations in the indictment. As such, proof of these incidents is relevant to the matters at trial. Rule 404(b)(1) of the Federal Rules of Evidence

8

states, in part that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Moreover, "Rule 404(b) is a rule of inclusion," and relevant evidence will be admitted except "that which tends to prove only criminal disposition." *See United States v. Briley*, 770 F.3d 267, 275–76 (4th Cir. 2014)(internal quotation marks omitted).

In assessing admissibility of Rule 404(b) evidence, this court has set forth the following requirements: (1) the prior-act evidence must be relevant to an issue other than character; (2) it must be necessary to prove an element of the crime charged or to prove context, *United States v. Queen*, 132 F.3d 991, 995, 998 (4th Cir. 1997); (3) it must be reliable; and (4) its probative value must not be substantially outweighed by its prejudicial nature. *United States v. Lespier*, 725 F.3d 437, 448 (4th Cir. 2013) (alteration omitted) (internal quotation marks omitted).

### III. HIGHTOWER'S INVOLVEMENT IN THE HEALTH CARE FRAUD SCHEME AND THE EXTORTION MURDER OF DAVID WUTOH

#### A. Intrinsic to the Crimes Charged

Evidence of Hightower's involvement in the RXRS health care fraud scheme and the extortion murder of David Wutoh are inextricably intertwined with the story of the crime. First, they provide his motive for wanting the RXRS employee killed. Second, with respect to the witness murder counts, that government must prove that the victim was killed in retaliation for providing information about a federal crime and to prevent the witness's attendance at a court proceeding. The complete story of what happened to Latrina Ashburne cannot be told without explaining the existence and significance of her next door neighbor, the RXRS employee. The significance of the RXRS employee cannot be established without discussing the illegal activities

9

of Hightower, and what he believed the RXRS employee had reported to the authorities. His contacts with witnesses who had been interviewed by law enforcement and who were compelled to testify before the grand jury investigating the crimes speaks to his heightened awareness that a case was building against him.

In order for Hightower's actions to have context, the government should be permitted to introduce testimony and evidence about the allegations and the proof of his involvement in the healthcare fraud scheme and the extortion murder of David Wutoh. With respect to the health care fraud scheme, the government intends to introduce witness testimony that Hightower, Crawford and Myles were all charged with health care fraud for submitting claims to Medicaid that falsely sought payment for equipment and supplies that were never provided to patients, and that the RXRS employee provided information to law enforcement about the fraudulent scheme. Hightower repeatedly spoke of the allegations and of the RXRS employee over recorded jail calls. His knowledge and involvement of the fraud and what he suspected the RXRS employee and other potential witnesses were telling law enforcement is intrinsic to the crimes charged.

With respect to the David Wutoh extortion murder, proof of Hightower's involvement and what he believed the RXRS employee knew about his involvement is equally important and intrinsic to the crimes charged. In fact, Hightower's conviction for the David Wutoh extortion murder should be admitted as it strengthens the evidence of Hightower's involvement in the murder, which makes his motive and desire to kill the witness against him even stronger and more probative. Hightower spoke to Carter on recorded jail calls about Wutoh not paying him back the money owed. It had been going on long enough that Carter offered to pay Wutoh a visit when he (Carter) got out of jail – meaning that Carter was willing to force Wutoh to pay up with either violence or threats of violence. This call too, establishes the nature of the relationship and the

closeness between the two men. Hightower also stated on recorded jail calls that his cellphone was allegedly pinging outside of Wutoh's residence at the time of the murder. Cell site location data did in fact place Hightower outside of Wutoh's residence at the time of the murder, and it was these very phone records that Hightower was complaining about during the jail calls. That particular cellphone location hit that Hightower complained about is the reason that Carter left his personal phone at home on the morning of the murder. The aforementioned evidence about the David Wutoh murder provides additional background and context to the plot to kill the RXRS employee.

The motive for wanting the RXRS employee dead belonged to Hightower. Although not an element of the crimes charged, motive is at the heart of this case. With every witness interviewed, every detention hearing scheduled, Hightower's freedom was at stake and the evidence will establish that Hightower was becoming increasingly stressed about his future and increasingly angry about the whistleblower. His involvement in these other acts are "necessary preliminaries to the crimes charged." *Chin* 83 F.3d at 88. Without the aforementioned evidence, the story is incomplete.

### B. Proper 404(b) Evidence

In addition to being so inextricably intertwined with the facts of the case, the aforementioned evidence is also admissible under Rule 404(b) as the acts are relevant to motive, intent, preparation, plan, knowledge, and identity – all permitted uses under the rule. The acts are necessary in the sense that they are all probative of either an element of the offenses charged or provide context so that facts are not presented in a vacuum and can be assessed and understood. The acts are reliable in that the evidence comes from witnesses, from Hightower's own words, and is corroborated by other evidence in the case. Finally, in weighing the evidence under Rule 403,

11

the probative value of the other acts evidence is not outweighed by any prejudicial nature. None of the other acts will cause confusion with respect to the charges against Hightower nor will they cause the jury to make a decision based on emotion rather than reason.

For these reasons, the aforementioned other acts can alternatively be admitted as proper 404(b) evidence.

## IV.   EVIDENCE OF HIGHTOWER'S DRUG TRAFFICKING ACTIVITIES

### A. Intrinsic to the Crimes Charged

Similarly, evidence of Hightower's involvement in marijuana trafficking activities is inextricably intertwined with the story of the crime and also provides context and depth to the relationship between Hightower and other individuals.

Hightower was a marijuana dealer long before he was a delivery driver for RXRS. He sold marijuana in the Park Heights area of Baltimore. His longtime friend and associate, Davon Carter, also sold drugs in Baltimore. Hightower and Carter grew up together hustling on the streets. In anticipation of his possible detention in 2016 after the government obtained a superseding indictment adding the Wutoh murder extortion, Hightower turned over his cars and marijuana trafficking business to Carter. The background and context of their relationship is essential to understanding the trust between the men, a trust so strong that Hightower could recruit Carter to kill for him. *See, United States v. David*, 509 Fed.Appx. 246 (4th Cir. 2013)(evidence that defendant committed three prior thefts with conspirator was proper 404(b) evidence as the past dealings between the men helped explain why the men conspired with each other in the instant case).

Furthermore, Hightower's marijuana trafficking activities are intrinsic to the crimes charge because it establishes a means by which Hightower could pay Carter for killing the witness against

12

him. Count Five charges Hightower with conspiring to commit Murder-for-Hire. The elements of Murder-for-Hire are as follows:

> First, that the defendant traveled or caused someone else to travel interstate or used or caused someone else to use the mail or any facility in interstate commerce;
>
> Second, that this travel or use of the mail or any facility in interstate commerce was done with the intent that a murder be committed in violation of the laws of any State or the United States; and
>
> **Third, that anything of pecuniary value was received or promised or agreed to be paid as consideration for the murder.**
>
> Fourth, that Latrina Ashburne died as a result of defendant's participation in this offense.

Sand, *Modern Federal Jury Instructions*, 60-14 (emphasis added).

When Carter was arrested on June 1, 2016, he was in possession of over $7,000 in cash and roughly two pounds of marijuana. Through the evidence from this stop and other evidence at trial, the government will establish that Hightower gave Carter his source, his customers, and his earnings from drug trafficking. Thus, Hightower's marijuana trafficking is intrinsic to the evidence to prove an element of Count Five.

**B. Proper 404(b) Evidence**

In addition to being so inextricably intertwined with the facts of the case, the evidence of Hightower's drug dealing is admissible under Rule 404(b) as it is relevant to the preparation and planning of the murder for hire conspiracy and it establishes the trusting relationship between Hightower and his co-conspirators. The acts are necessary in that they are all probative of either an element of the offenses charged (murder *for hire*), and also in that they provide context to why Hightower was comfortable turning to Carter for help with his legal problems. The evidence of Hightower's drug dealing will come from witnesses and will be corroborated by other evidence in

13

the case, namely the seizure of the marijuana from Hightower's BMW on June 1, 2016.  Finally, in weighing the evidence under Rule 403, the probative value of the marijuana dealing evidence is not outweighed by any prejudicial nature.  A curative instruction to the jury can prevent any confusion with respect to the charges against Hightower by explaining that Hightower is not on trial for drug trafficking and that such evidence is only being admitted for limited purposes.

For these reasons, the aforementioned other acts can alternatively be admitted as proper 404(b) evidence.

## V. HIGHTOWER PREVIOUSLY INCARCERATED WITH VARIOUS INDIVIDUALS

Various witnesses who know Hightower may briefly refer to the fact that they knew Hightower from prison to explain a relationship.  For example, at some point, Clifton Mosley and Hightower were incarcerated together and grew close.  Another witness, S.B., also met Hightower in jail and will testify that the men became friends and stayed in touch upon their release.  The reasons for their respective incarcerations need not be mentioned but it is an inevitable fact of their relationships and the basis for their bonds.

Such proof is often introduced as necessary background. *See, e.g., United States v. Ashburn*, 2015 WL 862118, at *1-2 (E.D.N.Y. Feb. 27, 2015) (defendant's prior incarceration constituted "direct evidence of the relationship between [the] co-conspirators," the prejudicial effect of the evidence did not substantially outweigh its probative value); *United States v. Rodney Johnson,* 2013 WL 6091601, at *3 (S.D.N.Y. Nov. 15, 2013) (deeming testimony from a cooperating witness about his incarceration with the defendant prior to the charged conspiracy "a classic instance of background evidence that is necessary to ... begin the story that will be told at the trial"). *See, e.g., United States v. Faison*, 393 F. App'x 754, 759 (2d Cir. 2010) (approving testimony from defendant's co-conspirator that the two had shared a cell in prison; "[d]istrict

courts have 'discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators' ") (*quoting United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 2003).

To the extent evidence of incarceration is reflected in communications between co-conspirators it is also admissible. *See, e.g., United States v. Guang Ju Lin*, 505 F. App'x 10, 12 (2d Cir. 2012) (upholding admission of "ten telephone calls between Lin and two associates identified by the Government as members of his criminal enterprise that were recorded while Lin was incarcerated and awaiting trial"; *Ashburn,* 2015 WL 862118, at *3 (admitting "evidence of emails and prison calls recorded while [defendant] and his co-defendants ha[d] been imprisoned pending trial in [the instant] case"; evidence "establish[ed] that the [d]efendants have been communicating with others.").

Accordingly, the government respectfully requests that this Court grant its motion to admit Rule 404(b) evidence concerning the defendant's prior conduct.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Court permit the admission of this evidence at trial.

    Respectfully submitted,

    Kelly O. Hayes
    United States Attorney


By: _____/s/_____
    Kim Y. Hagan
    Paul E. Budlow
    Assistant United States Attorneys

15