# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW HIGHTOWER,<br><br>Defendant. | CRIMINAL NO. SAG-23-0186 |

## GOVERNMENT'S TRIAL MEMORANDUM ON
## CO-CONSPIRATOR STATEMENTS

The United States of America submits this Trial Memo on issues likely to arise at trial relating to co-conspirator statements. The government is expressly *not* requesting pretrial determination of the admissibility of co-conspirator statements. No such a determination is required. *See infra* at 3-4. Moreover, courts have stressed that whether a statement was in furtherance of a conspiracy turns on the context in which it was made. *See, e.g., United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009). Accordingly, decisions on admissibility should be made during the testimony of the witnesses at trial.

## FACTS

The government's witnesses will testify to many things based on their own observations or statements of the defendant himself, as defined in Fed. R. Evid. 801(a), (d)(2)(A). The government also intends, however, to elicit testimony that is admissible under Fed. R. Evid. 801(d)(2)(E).

This case involves a conspiracy lead by Hightower, with the goal of killing the witness against him in a federal fraud and extortion resulting in murder trial. The early stages of the conspiracy occurred well before Hightower was detained, and continued through his detention, the murder, and the attempts to evade law enforcement. Hightower, Carter, and Mosley were all

1

members of the conspiracy, and each made statements in furtherance of the conspiracy at all relevant times. While the statements that Hightower made to Carter and Mosely will be admissible as a statement of a party opponent under Fed. R. Evid. 801(a), (d)(2)(A), many statements between Carter and Mosley outside of Hightower's presence are admissible as statements of a party's opponent's coconspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). For example, statements between Carter and Mosely about the planning and carrying out of the murder are all statements in furtherance of the conspiracy are not hearsay and are admissible.

At least one co-conspirator is expected to testify at trial that he was told by another co-conspirator about the other's intent to kill the witness, the description, address, and vehicle of the victim, the plan to kill the witness, including where the shooter would hide, where the pickup spot would be, that they should turn off their phones to avoid being traced the way Hightower was in the Wutoh murder, and concern about the intensity of the investigation that would follow the murder. The conversations continued after the murder and included discussions of what went wrong during the murder and monitoring the progress of the federal investigation.

Statements in furtherance of the conspiracy were also made others who were not co-conspirators, including friends, associates, and girlfriends, who were likely unaware of the conspiracy. These statements to others included requesting help researching the victim, false statements to explain the conspirator's change in routine, creating alibis, and moving and hiding vehicles. By way of example, Mosley's then-girlfriend testified at the prior trial that the night before the murder, Mosely woke her up and asked her to assist him with using Maryland Judiciary Case Search. The government will present evidence that the intended victim was scheduled to appear in court on a civil case that was scheduled for the day of the murder, and that the court date was listed on Maryland Judiciary Case Search. Thus, to the extent that Mosley's request is

otherwise hearsay, it was clearly made in furtherance of the conspiracy to kill the witness. Mosley's then-girlfriend also testified that Mosley falsely told her that he left early on the morning of May 27, the day of the murder, because he was taking his daughter to school, and later admitted that he lied about his whereabouts. All this information was conveyed "in furtherance" of the conspiracy.

I. **Co-conspirator statements are admissible without 1) a prior hearing, 2) a finding of the reliability of the statements, 3) prior determination that a conspiracy exists, and 4) without making a record of the reasons for admission.**

Statements "by a co-conspirator of a party during the course and in furtherance of the conspiracy" qualify as an exception to hearsay under the Federal Rules of Evidence. *See* Fed. R. Evid. 801(d)(2)(E). To admit testimony under this exception, a court must conclude "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." *United States v. Neal,* 78 F.3d 901, 905 (4th Cir. 1996) (internal quotation marks omitted); *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987), *see also United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992); *United States v. Smith*, 441 F.3d 254, 261 (4th Cir. 2006).

Assuming the elements of the co-conspirator exception are met, further inquiry into the reliability of the statements is not required. The Supreme Court holds that the hearsay rules and the Confrontation Clause protect similar values and that the co-conspirator exception is a "firmly rooted hearsay exception." *Bourjaily*, 483 U.S. at 183. Accordingly, the Court has held that the "Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)." *Id*. at 183-84; *see United States v. Diaz*, 176 F.3d 52, 86 (2d Cir. 1999).

3

Admissibility of statements of co-conspirators in furtherance of the conspiracy under Rule 801(d)(2)(E) is a question of law to be determined by the court, not a question to be submitted to the jury. *Id.* at 175; *accord United States v. Jackson*, 863 F.2d 1168, 1171 (4th Cir. 1989); *accord United States v. Spoone*, 741 F.2d 680, 686 n.1 (4th Cir. 1984). However, no pretrial ruling on the admissibility of co-conspirator statements or prior determination that a conspiracy exists is required. A trial court may conditionally admit co-conspirators' statements "subject to the subsequent satisfaction of the requirements for their admission." *Blevins*, 906 F.3d at 1256. The Fourth Circuit rejected the "formalistic requirement that there must be a hearing to determine the existence of a conspiracy before statements can be admitted under Rule 801(d)(2)(E)." *Id.* (citing *United States v. Hines,* 717 F.2d 1481, 1488 (4th Cir. 1983)).

In *Blevins*, the trial court considered the defendant's motion to exclude the statement at issue in a pre-trial hearing; however, the judge "declined to make a final ruling." *Id.* at 1256. The statements described the defendant's "physical characteristics and the circumstances of a prior arrest involving significant quantities of marijuana." *Id.* at 1255. When the defendants challenged the entry of the statement later at trial, the judge indicated that the elements of admissibility under *Bourjaily* had been met. *See id.* The Fourth Circuit affirmed, noting that the trial judge is not required to "set on the record his reasons for making this evidentiary ruling." *Id.*

It is not settled "whether independent evidence of a conspiracy is required [that is beyond the statements themselves]." *Neal*, 78 F.3d at 905 (citing *United States v. Shores*, 33 F.3d 438, 443 n.4 (4th Cir. 1994)). However, the Fourth Circuit has held that "an alleged co-conspirator's statements may be considered in determining the existence of the conspiracy." *Id.*

II. **Most Courts including the Fourth Circuit require a "broad construction" of "in furtherance" and interpret the "idle chatter" exception narrowly.**

In *United States v. Smith*, the Fourth Circuit recognized that:

4

> Most courts, including the Fourth Circuit, 'construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the exception.'

441 F.3d 254, 262 (4th Cir. 2006) (quoting Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* vol. 5, §§ 801.34[5], 801–89). The Court affirmed the admission of the co-conspirator's statements "[i]n light of the broad construction of the 'in furtherance' requirement." *Id.*

Examples of such broad construction include *Neal*, where the Court admitted statements reasoning that "[e]scaping detection and apprehension by police officers furthered the continued viability of the conspiracy." *Id.* (citing *United States v. Troop,* 890 F.2d 1393, 1404 (7th Cir.1989) ("Avoiding detection by law enforcement officials clearly furthers the aims of a conspiracy.")). The *Neal* Court affirmed the admissibility of the statements. Similarly, in *United States v. Shores*, 33 F.3d 438, 444 (4th Cir. 1994) the Court held that: "A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *Accord Neal*, 78 F.3d at 261–62 (statements refusing to do a drug deal admissible because they furthered the cause of the conspiracy, even though they did not further the drug deal at issue).

Statements of co-conspirators that "inform each other as to the progress or status of the conspiracy" are also statements made in furtherance of that conspiracy. *United States v. Mathis*, 932 F.3d 242, 254 (4th Cir. 2019) (conspirators providing a detailed account of the crime to other conspirators, advising that they had kidnapped and murdered an off-duty police officer), *citing United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014). Moreover, there is no requirement that the statement in furtherance of the conspiracy be made to another member of the conspiracy, and statements made to witnesses who are not co-conspirators are admitted as statements in

5

furtherance of the conspiracy. *Mathis*, at 255 (statement from co-conspirator to his girlfriend, who was not a co-conspirator, admitting that he and the other defendants "killed a cop" and asked the girlfriend if she could assist in the disposing of a vehicle ruled properly admitting, noting that "even casual relationships to the conspiracy" will satisfy Rule 801(d)(2)(E)).

Statements of co-conspirators in furtherance of a conspiracy are distinguishable from inadmissible "idle conversation." *See United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986). "However, this exception to the exception has itself been narrowly construed." C. Horn, Fourth Circuit Criminal Handbook § 46 at 102 (2014) (citing *United States v. Howard*, 115 F.3d 1151, 1156 (4th Cir. 1997); *United States v. Graham*, 711 F.3d 445, 452–53 (4th Cir. 2013); and *United States v. Lewis*, 10 F.3d 1086, 1092 (4th Cir. 1993), all rejecting defense contention that co-conspirator statements were inadmissible "idle chatter").

### III. Historical or retrospective statements that discuss past events, bring conspirators "up to date," provide background on other conspirators or encourage cohesiveness suffice to be "in furtherance."

Many courts have held that a statement is in furtherance where it is made to keep a co-conspirator abreast of events relevant to the conspiracy.

> Statements are generally admitted if they involve transactions within the conspiracy, discuss past events with other members, or simply keep other members up to date. Moreover, as long as the declarant and the party against whom the statement is offered were members of the conspiracy at the time of the statement, the statement need not have been made to a member of the conspiracy, as long as the purpose was to further the conspiracy.

Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* vol. 5, §§ 801.34[5], 801–91-93) (citations omitted). In *Graham*, the Fourth Circuit adopted the view that the co-conspirator exception covered discussions among conspirators of "the status of the conspiracy, the status of its members, and monies owed by one member to another." 711 F.3d at 455; *see United States v.*

*Dawson,* 141 F.3d1160, 1998 WL 188636 (C.A.4(Md.)) at *5 ("Retrospective statements are also in furtherance of the conspiracy if they serve to inform a conspirator of the status of the conspiracy."); *United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014) ("[W]e have recognized that '[s]tatements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy, further the ends of [a] conspiracy" (citations omitted)). Tape recordings of past events are admissible if they constitute activity which is plainly in furtherance of the conspiracy. *United States v. Haldeman*, 559 F.2d 31, 110 (D.C. Cir. 1976) (rejecting defendant Mitchell's claim that the tapes were "mere narratives of past events").

The D.C. Circuit considered statements that the trial court admitted, made by defendant Giraldo to cooperating witness Alvarez, about a co-conspirator's debts and a lost shipment of cocaine, and held:

> In *United States v. Perholtz,* we held that a past narrative may be admissible if it is 'part[] of continuing activity that was essential to' the conspiracy. 842 F.2d 343, 357 (D.C. Cir 1998). It is plausible that Giraldo made his statements to keep Alvarez informed about the current status of the conspiracy, ensuring that all coconspirators had up-to-date information. Indeed this is precisely the kind of example we envisioned in *United States v. Carson*. 455 F.3d at 366-67 (holding that statements that 'updated [others] on the status of the business' were admissible).

*United States v. Celis,* 608 F.3d 818, 843 (D.C. Cir. 2010). The Court noted that statements updating coconspirators may include ones that "provide background information on key conspiracy members." *Id.*

The same reasoning applies when the retrospective discussion involves even highly prejudicial conduct. In *United States v. Aviles-Colon*, 536 F.3d 1, 16 (1st Cir. 2008), the Court considered testimony by a witness named Torres about a murder committed by four defendants

7

that was not an overt act of the charged conspiracy. The First Circuit ruled that the statement was not "idle chatter" because the historical account served "to keep Torres abreast of the conspiracy's activities." *Id.* The Court approved a host of other statements relayed by Torres for the same reason. *Id.*

Similarly, in *Diaz*, the Second Circuit rejected a claim that a co-conspirator's description of a double homicide was idle chatter or otherwise not in furtherance. 176 F.3d at 83-86. The defendant argued on appeal that particularized guarantees of trustworthiness should be required to admit "narrative statements about past events [admitted] on the theory that they foster trust and cohesiveness among group members or inform each other as to the progress or status of the RICO conspiracy." *Diaz*, 176 F.3d at 86. The Court held that such statements fell within a "firmly rooted" exception to the hearsay rule, no inquiry into their reliability is required for their admission into evidence. *Id.*

**IV. Co-conspirator statements are not subject to the rule of *Bruton* or to Rule 602's personal knowledge requirement.**

Statements of non-testifying co-conspirators admissible under Fed. R. Evid. 801(d)(2)(E) are not subject to the *Bruton* rule excluding the statement of a non-testifying co-defendant implicating a defendant in criminal activity. *Shores*, 33 F.3d at 442-44; *United States v. Brooks*, 957 F.2d 1138, 1146 (4th Cir. 1992).

If the elements of the co-conspirator exception are met, the requirement of Rule 602 that a witness testifying to co-conspirator statements have "personal knowledge of the matter" does not apply. *United States v. Goins,* 11 F.3d 441, 444 (4th Cir. 1993).

## CONCLUSION

The government hopes that this Memo illuminates the legal foundation for the admissibility of co-conspirator statements during trial.

Respectfully submitted,

Kelly O. Hayes
United States Attorney


By: _____/s/_____
    Kim. Y. Hagan
    Paul E. Budlow
    Assistant United States Attorneys