**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**
Baltimore Division

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| v. | : | Case No.: SAG 23-186 |
| | : | |
| MATTHEW HIGHTOWER, | : | |
| | : | |
| | : | |

## MATTHEW HIGHTOWER'S RESPONSE TO GOVERNMENT'S MOTION TO ADMIT INTRINSIC EVIDENCE OR IN THE ALTERNATIVE PURSUANT TO RULE 404(b) (ECF 92)

Mr. Hightower is preparing to stand trial on five counts of murder and conspiracy related to Davon Carter's killing of Latrina Ashburne. The government's theory is that Mr. Hightower ordered or hired Carter and Mosley to murder a witness to prevent her from testifying against him in the healthcare fraud and/or Wutoh murder cases, but that they mistakenly killed the witness's neighbor, Ms. Ashburne. Carter and Mosley have already been convicted and sentenced to life imprisonment. Mr. Hightower was not tried with them, and it appears the evidence was insufficient to even charge him at the time. Since the Carter/Mosley trial, Mr. Carter[1] has provided a new version of events implicating Mr. Hightower and the government has cultivated a jailhouse informant to provide information against Mr. Hightower consistent with the government's theory. The case against Mr. Hightower is highly circumstantial—at best—save for the unreliable testimony of two cooperating witnesses. To buttress its case and to overcome witness unreliability concerns, the government seeks to introduce broad prior bad acts and character evidence to

---

[1] Notably, based on discovery provided to date, Mr. Mosely has not changed his story to implicate Mr. Hightower, even though cooperating would be the only way for him to reduce his life sentence. A reasonable inference is that Mosely is unwilling to lie under oath despite his clear incentive to do so.

effectively show that Mr. Hightower is a lifelong criminal whose character is consistent with ordering this murder.

By its Motion, the government seeks to introduce four expansive categories of evidence that it claims are either intrinsic to the charged offenses or generally admissible under Rule 404(b).[2] ECF 92. The government's Motion argues that seemingly any information related to the healthcare fraud conspiracy, David Wutoh's murder, Mr. Hightower and Mr. Carter's drug trafficking relationship, and Mr. Hightower's prior incarceration are all relevant and admissible in this case. Such a broad reading of Rule 404(b) would unfairly prejudice Mr. Hightower and unnecessarily extend this already long and complex trial by creating a series of trials within the trial as Mr. Hightower would be forced to defend himself on all these categories of uncharged conduct.

Despite the government's arguments, evidence of the prior acts are unnecessary to the government's proof of the charged crimes and must be excluded to prevent undue prejudice. Further, much of the information the government seeks to introduce is highly unreliable—internally and mutually inconsistent statements from a highly motivated cooperating co-defendant and serial jailhouse informant.[3] The government should not be permitted to build its case on an attempt to show a pattern and practice of bad character to prove facts that are unnecessary given direct testimony from Carter of Mr. Hightower's alleged role. Such character evidence is overly prejudicial and will inflame the jury. As such, the evidence should be excluded under Rule 404(b),

---

[2] Discovery provided subsequent to the Motion's filing suggests the government will further attempt to introduce evidence that Mr. Hightower made efforts to have Davon Carter killed.
[3] While the defense has not yet been provided the name of the informant, review of prior case files suggests this informant has been used in multiple prior cases. A direct challenge to the informant's testimony is being filed separately, under seal, in response to the government's sealed motion at ECF 94.

2

and if not, under Rules 403 and/or 401, because it lacks probative value, and what probative value it has is substantially outweighed by unfair prejudice and the confusion it will cause during trial.

Accordingly, for the reasons stated herein, Mr. Hightower respectfully asks this Court to exclude evidence of (1) the healthcare fraud conspiracy charges against Mr. Hightower that have subsequently been dismissed, (2) the extortion and murder of David Wutoh for which he was convicted, (3) drug trafficking activity by Mr. Hightower, and (4) Mr. Hightower's prior incarceration.

## ARGUMENT AND MEMORANDUM OF LAW

### I. Rule 404(b) Precludes Admission of Alleged Prior Criminality to Prove Mr. Hightower Acted Accordingly, and Rule 403 Bars Unduly Prejudicial Evidence.

Federal Rule of Evidence 404(b) governs character-based evidence and prohibits evidence of a defendant's crimes, wrongs, or acts—beyond those with which he stands charged—"to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Rule requires the government to prove that an individual committed the charged offense without relying on evidence of uncharged bad conduct suggesting he is the type of person who would commit the charged crime. *See United States v. Beeman*, N. 22-4488, 2025 U.S. App. LEXIS 9259 (4th Cir. Apr. 18, 2025). "It is not enough to introduce evidence of unrelated bad conduct and suggest—or hope—the jury believes the defendant must have committed the charged offense because he has done other bad things." *Id*. at *5. Consistent with Rule 404(b), the government cannot introduce evidence of prior bad acts by Mr. Hightower to paint him as someone likely to have committed the crimes charged.

Rule 404(b) applies "when the challenged conduct is extrinsic to the charged offense, not when it is intrinsic." *Id*. (quoting *United States v. Brizuela*, 962 F.3d 784, 793 (4th Cir. 2020)). Under 404(b) analysis, the government's Motion turns on whether evidence of the healthcare

fraud, Wutoh murder, drug trafficking, and prior incarceration are intrinsic or extrinsic to the charges Mr. Hightower now faces and whether the evidence is nonetheless unfairly prejudicial. A determination must be made as to whether the "uncharged conduct [is] 'probative of an *integral* component of the crime on trial or provide information *without which the factfinder would have an incomplete or inaccurate view* of other evidence or of the story of the crime itself.'" *Beeman*, 2025 at *7, (quoting *Brizuela*, 962. F.3d at 795) (emphasis added).

The Fourth Circuit's "decisions make clear that [bad acts] evidence must be 'necessary' to 'complete the story' of the charged offense" to be admissible. *Brizuela*, 962 F.3d at 795 (quoting *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994)). For evidence to be intrinsic, there must be a "clear link or nexus between the evidence and the story of the charged offense, and [] the purpose for which the evidence is offered [must be] essential" to the government's proof. *Id*. If the evidence is not essential to proving the case at hand, the introduction of extrinsic evidence could be used to "disguise the type of propensity evidence that Rule 404(b) is mean to exclude." *Id*.

Here, evidence of the healthcare fraud conspiracy and Wutoh murder are tangential to proving whether Mr. Hightower ordered or hired—or conspired with—Carter and Mosley to murder the RXRS witness. The other crimes evidence is not essential to the government's proof. Admitting evidence that Mr. Hightower was charged and/or convicted of murdering David Wutoh would be highly prejudicial and would inflame the jury to ignore Mr. Hightower's presumption of innocence on the current indictment, leading them to rely on his alleged character for dangerousness to convict. None of the government's four categories of bad acts evidence is essential to the elements of the case against Mr. Hightower and all should be excluded as propensity evidence under 404(b).

4

Prior acts evidence may only be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). However, even if evidence is admissible for one of the reasons set forth in Rule 404(b), it must still pass the balancing test of Rule 403, which excludes evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Evidence of prior bad acts under 404(b) is only admissible when it is: (1) "relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant"; (2) "necessary in the sense that it is probative of an essential claim or an element of the offense"; (3) "reliable"; and (4) the probative value is not "substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *U.S. v. Johnson*, 617 F. 3d 286, 296–97 (4th Cir. 2010) (quoting *United States v. Queen*, 132 F. 3d 991, 997 (4th Cir. 1997)).

Rule 404(b) also requires the Government to provide "reasonable notice" of any 404(b) evidence it intends to use at trial, the purpose for which the evidence will be offered, and the reasoning that supports the purpose. Whether the notice is reasonable depends "largely on the circumstances of each case." Fed. R. Evid. 404(b) advisory committee's note to 1991 amend. A court may decide that notice is unreasonable for lack of completeness, which renders the evidence inadmissible. *Id.*

Even if the evidence were admissible under 404(b), it fails to pass the Rule 403 balancing test, which excludes evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. "Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value

5

of the offered evidence." *United States v. Chaudhri*, Nos. 23-4054, 23-4077, 23-4078, 2025 U.S. App. LEXIS 8209 (4th Cir. Apr. 8, 2025) (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (cleaned up)).

In assessing the prejudicial nature of other crimes evidence, two recent Fourth Circuit cases articulate the contours of the analysis by examining whether the evidence is "substantially similar, or at least no more sensational, than the crimes charged." *Id* (citing *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995)). In *Chaudhri*, the other crimes evidence was additional abuse after the charged conspiracy that was similar to the charged abuse during the conspiracy. *Id*. In *Beeman*, it was an uncharged threatening letter to investigators similar to the letters for which the defendant was charged. *Beeman*, 2025 U.S. App. LEXIS 9259, at *9. In both cases, the evidence of guilt was substantial and sourced from multiple witnesses, and the Fourth Circuit found no prejudice. But in Mr. Hightower's case, evidence of a separate earlier murder would be highly prejudicial and should thus be excluded. The Fourth Circuit in *Chaudhri* reasoned:

> [W]e readily conclude that the evidence was not unfairly prejudicial. The evidence of Appellant's continued abuse of M.B. was no more sensational than the evidence related to their years-long conspiracy to obtain her forced labor. And, in any event, we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by" the admission of this evidence.

2025 U.S. App. LEXIS 8209, at *24 (quoting *Brizuela*, 962 F.3d at 798 (citation omitted)). Here, given the questionable reliability of the cooperating witness testimony against Mr. Hightower and the otherwise circumstantial nature of the evidence, the risk of inflaming the jury by admitting the other crimes evidence is disproportionate to the evidence's probative value. Exclusion is therefore proper.

Whether a witness met Mr. Hightower in jail is also irrelevant and prejudicial. The government may introduce evidence of when the witness met him, but the fact of Mr. Hightower's

6

prior incarceration would impermissibly reveal that he has been previously charged or convicted of criminal conduct, violating Rule 404(b). The place of their meeting is irrelevant to their subsequent relationship. The government should not be permitted to paint Mr. Hightower as a criminal to give the jury reason beyond the facts of the case to convict him.

**II. The Government Should be Precluded from Using Unfairly Prejudicial Terms in Describing Mr. Hightower's Alleged Prior Conduct.**

    A.  "Whistleblower"

Throughout its pleadings and at oral argument, the government has referred to the RXRS healthcare fraud witness as a "whistleblower," a loaded and prejudicial characterization of her role and testimony. "Whistleblower" connotes that the witness was serving the public interest in providing information against Mr. Hightower, Mr. Crawford, and Ms. Myles, and that she was granted certain legal protections for the information she provided. The facts and circumstances of the witness's information and testimony are far outside the scope of the government's current case against Mr. Hightower and would be in dispute if brought out. Litigating her role in the prior case during this trial would needlessly extend and complicate an already long and complex trial.

    B.  "Extortion Murder"

The government can fully present its case against Mr. Hightower without using the phrase "extortion murder" to describe the killing of David Wutoh. All that is relevant to the government's case for motive is that the witness was prepared to make statements against Mr. Hightower that would implicate him in a crime for which he could serve substantial prison time. "Extortion" is a loaded term, particularly when modifying "murder," with connotations of mob and gang enforcement murders. Even under the government's most expansive theory of Mr. Wutoh's murder, the killing was related to a personal loan that was not being repaid fast enough for Mr.

7

Hightower's liking.[4] Describing Mr. Wutoh's killing as an "extortion murder" would be unduly prejudicial, insinuating that Mr. Hightower was a member of some criminal organization.

### III. If the Court Does Not Exclude the Other Crimes Evidence Entirely, It Should at Least be Sanitized to Prevent Undue Prejudice.

In the alternative, Mr. Hightower asks this Court to order the evidence be sanitized by stipulation that L.E. was a witness against Mr. Hightower in a prior prosecution for which he faced substantial prison time, without allowing any facts about a prior murder or whether Mr. Hightower was previously convicted. Such a stipulation would allow the government to argue its theory of the case without unnecessarily further inflaming or prejudicing the jury against Mr. Hightower.

Respectfully submitted,

Matthew Hightower, *by counsel*

_____/s/_____
Daniel H. Goldman
The Law Office of Daniel Goldman
421 King Street, Suite 505
Alexandria, Virginia 22314
MD Bar # 220210033
(202) 677-5709 – Phone
dan@dangoldmanlaw.com

Teresa Whalen
801 Wayne Avenue, Suite 400
Silver Spring, Maryland 20910
MD Bar # 25245
(301) 728-2905 (Phone)

---

[4] While Mr. Hightower was in fact convicted of 2nd degree murder during the course of extortion, the government's theory of the crime does not make logical sense. Why would Mr. Hightower kill someone to enforce a debt that was being repaid, albeit behind schedule. To further its theory of the Wutoh murder, the government argued that Mr. Hightower's boss and co-conspirator, Harry Crawford, believed he was a beneficiary on Mr. Wutoh's life insurance policy, but that theory still does not provide clear motive for Mr. Hightower to kill someone who had repaid most of the debt owed.

8

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of May, 2025, I will electronically file the foregoing Motion with the Clerk of Court using the CM/ECF system, which will provide service to all parties.

                                                     /s/
                                       Daniel H. Goldman, VSB # 82144
                                       The Law Office of Daniel Goldman
                                       421 King Street, Suite 505
                                       Alexandria, Virginia 22314
                                       (202) 677-5709 – Phone
                                       dan@dangoldmanlaw.com
                                       *Counsel for Mr. Hightower*